HINCKLEY and another, Appellants, vs. PFISTER and others, Respondents.

*September 5 — September 27, 1892.*

CORPORATIONS: EQUITY. (*1*) *Illegal issue of bonds: Cancellation.* (*2, 3*) *Invalid stock: Rights of holders: Pledge.* (*4, 5*) *Suretyship.* (*7, 8*) *Receivers: Dissolution of corporation: Who may maintain action.* PRACTICE. (*6*) *Consolidation of actions: Pleading.* (*9*) *Interpleader.*

1. Where bonds of a corporation, pledged as security for its debt, were void under sec. 1753, R. S., because issued without its receiving seventy-five per cent. of their par value, no action for the surrender or cancellation thereof can be maintained by the corporation, or by a stockholder in its right, without a tender of the amount due to the pledgee. The plaintiffs in this case, the corporation and a stockholder who, as president, participated in the unlawful issue of the bonds, are in equal wrong with the party to whom they were issued, and are not entitled to relief.

2. Where all the stock of a corporation is void under sec. 1753, R. S., because not fully paid for, none of the stockholders can make any claim by means of or through it to the aid or protection of a court of equity as against the others, based upon the rights of a stockholder.

3. But a holder of such void stock who has pledged it as security for a debt of the corporation, under an agreement that bonds pledged by the corporation for the same debt shall be first resorted to, may sue

Hinckley and another vs. Pfister and others.

for a conversion of his stock by a sale in violation of such agreement. But where, by the terms of the pledge, the right to vote on the stock was transferred to the pledgee, the pledgor cannot ask a court of equity to restore to him the stock or the right to vote on it, until the purpose for which it was pledged has been satisfied.

4. An action by the pledgor in such a case, against the corporation, the pledgee, and others, to establish an indebtedness of the corporation to himself, for the appointment of a receiver, for the cancellation of the bonds pledged by the corporation on the ground that they were unlawfully issued, for an injunction against the transfer of stock or bonds, and for general relief, cannot be sustained as an action by a surety of a corporation (through the pledge of his stock for its debt) to compel the corporation to pay its debt to the pledgee, or to compel the latter to proceed against the property of the corporation and the bonds pledged to obtain payment, where no such specific relief is prayed and the complaint asserts the invalidity of the bonds pledged and that the corporation has not property sufficient to pay its debts.

5. A surety cannot go into equity for relief against either the creditor or the debtor until after the debt is due.

6. Where actions brought by different parties are consolidated without change in the pleadings, the complaint of one plaintiff cannot aid that of another of which it is no part.

7. A creditor at large of a corporation, whose remedy at law has not been exhausted, cannot maintain an action in equity for the appointment of a receiver, etc.

8. Neither a stockholder as such nor the corporation itself can maintain an action in equity for the purpose of winding up the business of the corporation.

9. An action in the nature of an interpleader should not be brought except when there is no other way for plaintiff to protect himself from a litigation in which he has no interest; and, in order to maintain the action, plaintiff must show that he has not acted in a partisan manner as between the different claimants.

APPEAL from the Superior Court of *Milwaukee* County. The appellant *Hinckley* commenced an action against the *Milwaukee Electric Railway Company,* *Richard Burke, August H. Vogel, Charles F. Pfister, John A. Hinsey,* H. H. Field, Oscar D. Aeppli, G. W. Hinckley, and A. M. Hinckley stating, in substance, the incorporation of the

*Milwaukee Electric Railway Company*, December 17, 1889, for the purpose of operating a street railway in Milwaukee and adjoining towns, using electric or other motive power, and empowered to acquire the property and franchises of the Milwaukee Cable Railway Company; that the first-named company organized March 10, 1890, with a capital stock of $500,000, being 5,000 shares of $100 each; that the latter company transferred to the electric railway company all its property, rights, and franchises, and the entire capital stock of the electric railway company was issued to the plaintiff *Hinckley* and the defendants *Hinsey*, Aeppli, Field, and G. W. and A. M. Hinckley; that none of them paid anything of value for such stock except the plaintiff, but what he paid for his stock is not stated; that the only person having any actual interest in the electric railway company defendant, or in the cable railway company, is the plaintiff, but precisely what interest he had is not stated; that the plaintiff and defendant *Hinsey* were the promoters of the corporation defendant, and the other defendants named, to whom stock was issued, were brought in and given certificates of stock merely for the purpose of completing and forming a corporate organization, except the defendant *Manschott*, who claimed some stock under the defendant *Hinsey;* that the stock of the electric company was, at the date aforesaid, issued to the plaintiff and *Hinsey* and such persons as they selected, in the proportion of three fifths to plaintiff or his order, and two fifths to *Hinsey* or his order, but the same was issued to said *Hinsey* gratuitously, without any good or valuable consideration, and contrary to law; and for a part of the stock of said plaintiff in the electric railway company he paid no money or value, but what part thereof is not stated; that for the greater portion the plaintiff did pay moneys, property, and services, but what amount is not alleged.

On the same day a mortgage or deed of trust was exe-

cuted by the plaintiff as president, and the defendant Aeppli as secretary, of the electric railway company, in its name, to the defendant the Northern Trust Company, as trustee, the same being an Illinois corporation, to secure an issue of a series of 500 coupon bonds of the sum of $1,000 each, to mature April 1, 1910, bearing interest at the rate of six per cent. per annum, payable semi-annually. This was the first mortgage on the property of the company, and was recorded. It contained a provision that the bonds therein described should not be valid until certified by the trustee, who, it is alleged, accepted his trust and certified and delivered to the electric railway company 250 of said bonds of $1,000 each, and that it issued said bonds to the defendant *Pfister* as collateral security of a loan of $125,000 made by him to said company on its note, and for no other purpose, which contained a power of sale authorizing *Pfister*, in case of default in the payment of the note, to sell the bonds at private sale; that the electric railway company had no means sufficient for the payment of its debts, and *Pfister* was thereby enabled to take advantage of it, and sell $100,000 of said bonds to the defendant *Vogel* for $50,000, retaining $150,000 of said bonds and the note of the electric railway company for $125,000, on which he claims there is still due to him the sum of $70,000; that at the time *Pfister* made said loan the plaintiff and defendant *Hinsey* pledged to him to secure its payment certain stock of the company, namely, *Hinsey* pledging 1,001 shares, and the plaintiff 1,501 shares; that *Pfister* knew that the plaintiff was a mere surety, through his stock, on the note, and it was expressly agreed in a separate writing "that no sale of plaintiff's pledged stock should take place until after the property of the electric railway company, namely, its said bonds, were exhausted on said power of sale."

It is alleged that "all money expended in creating or constructing or purchasing said street railway company,

and all the corporate assets of the said street railway company, and also all of the assets of the Milwaukee Cable Railway Company, aforesaid, except such as was acquired from the proceeds of the said $125,000 loan, and such as said defendant street railway company is still indebted for, have been furnished by the plaintiff," and no other of the stockholders of said company paid or furnished any portion thereof; and that said plaintiff furnished said money and paid the same under an agreement with said street railway company that he should *be and remain a creditor* of the defendant street railway company to the amount of the money and property so advanced by him, and that the same should be repaid to him from the proceeds of the sale of said corporate bonds, or that, in lieu thereof, he should have such bonds for the same at not less than seventy-five cents on the dollar; and that by virtue of such advances and said agreement the plaintiff is a creditor of said corporation to an amount exceeding $100,000, for money actually advanced, materials and supplies furnished, and labor performed, for said corporation, for which, by said agreement, he was *to be paid as aforesaid.* That certain officers of the defendant company, without plaintiff's consent, after the pledge of said $250,000 of bonds to *Pfister,* ordered the trustee in the mortgage to issue and certify no more bonds, so that the plaintiff is unable to procure any bonds in payment of his advances, and the defendant is unable to pay its existing debts. That plaintiff is a director and the president of the company, and 'the defendants G. W. Hinckley, A. M. Hinckley, H. H. Field, Oscar D. Aeppli, *John H. Manschott, John A. Hinsey, Charles F. Pfister, Richard Burke,* and *August H. Vogel* have or hold in their name stock of said defendant company, sold by said *Pfister* to *Vogel* under said power of sale for the sum of $5,000, but in disregard of *Pfister's* agreement not to sell the same until the bonds of defendant so issued were all sold. That

the sale of said stock and bonds to *Vogel* was formal or colorable, and no consideration was paid therefor, but they were bid in by him as trustee for *Pfister*, in pursuance of an arrangement or combination between the defendants *Pfister*, *Vogel*, *Burke*, and *Hinsey*, which is charged to have been collusive and entered into for the purpose of creating fictitious liens against the corporation by virtue of the bonds and obtaining control of its stock, so as to control corporate action with reference to said bonds, and to enable *Pfister* to occupy the position of creditor for a large amount under the said bonds, and at the same time control corporate action with reference thereto. That, after bidding in the stock, *Vogel* transferred " part of the same" back to *Pfister*, and " part to the defendant *Burke*," and that *Pfister* and *Burke* claimed the right to vote such corporate stock at the corporate meetings, and the plaintiff also claims the right to vote the same stock, and to be the owner thereof, and to be the owner of his proportion of that held by the defendant *Vogel;* and that *Pfister*, *Vogel*, *Hinsey*, and *Burke* threaten and intend to vote out the plaintiff from all trusteeship or office in the corporation, the defendant *Pfister* being enabled to control a majority of the stock of the corporation, and at the same time to hold against it the bonds so alleged to be illegally acquired, and the note, on which he claims there is still due $70,000. There is no allegation to show what part of the stock is so held in the name of *Pfister* or *Burke* or *Vogel*, nor whether, when the same was pledged, any transfer or evidence of the pledgee's right was entered on the stock register, nor whether the transfer to the said several defendants of the stock claimed to be held by them respectively has been entered thereon.

It is alleged that the defendants Field, Aeppli, and *Hinsey* are a majority of the present board of directors, and the interest of Field is merely nominal, and Aeppli is the clerk or secretary of *Hinsey*, and all said persons are

controlled by the defendant *Hinsey*. That *Vogel*, *Burke*, and *Pfister* are not purchasers of said stock for value, but took the same with knowledge and notice of the defects in such stock and in the title thereto and right of *Pfister* to sell it; and that he took the bonds purchased by him with full knowledge of their invalidity and illegality. That the property of the electric railway company has been sold for taxes of two years last past, and tax certificates thereon have been issued to the defendant *Pfister*, and a large number of suits at law have been commenced and are pending against the company, and judgments are liable to be rendered against it. That the property of the defendant is liable to attachment by its creditors, and *Pfister* is interested in rival and competing lines of street railway in Milwaukee. That *Pfister*, *Burke*, *Vogel*, and *Hinsey* claim the right to vote on the stock so acquired by them at the corporate meetings, and to gain control of the corporation, and are combining to carry out such intention by virtue of their *holding such certificates*, for which no money has been paid "except *such* certificates as are in their hands and belong to the plaintiff, and not to *Vogel* and *Burke*." That it is important that the street railway should be kept in operation, and no attachment be levied thereon, and no forfeiture of its franchises be incurred. That its gross income is not over $10,000 per month. That the semi-annual interest for October, 1890, upon said bonds, is past due, and, by the terms of the mortgage, default in its payment makes the whole principal sum of the bonds due, at the option of the owner. That the *bona fide* debts of the railway company defendant, including the claim of the plaintiff, exceed $250,000, and that it is without means or property to pay the same.

The plaintiff asks judgment (1) that the amount due to him from the street railway corporation defendant be ascertained and adjudged, and he be declared to have a lien

on its corporate property therefor; (2) that an account be taken of all the property, credits, effects, and indebtedness of the corporation; (3) that a receiver be appointed of such property, and that it be sold under the direction of the court to pay plaintiff and other creditors, and after the payment of such debts the residue be brought into court to be disposed of according to law; (4) that the $250,000 of bonds in the hands of *Vogel* and *Pfister* be canceled and set aside; (5) that an account be taken of all the stock of the plaintiff that was issued without consideration, and void under the statute for that cause, and that all stock so issued be set aside and canceled, and that the ownership of the valid portion of the stock of the defendant the electric railway company be determined and declared, so as to determine the rights of the parties in the surplus, if any, arising from the sale of its property; that its *bona fide* indebtedness be declared a lien on the corporate property at its true amount; that the defendant *Pfister* be charged with the amount of any stock or bonds which he may have unlawfully disposed of by reason of the same having passed into the hands of other persons, and that he be allowed no more than the actual indebtedness due him, namely, $125,000 and interest, as agreed; and, after payment of the just debts, costs, etc., the proceeds of such sale be divided among its *bona fide* stockholders in proportion to their respective interests. An injunction against *Hinsey, Burke, Pfister,* and *Vogel* was prayed for, and general relief.

Subsequently the *Milwaukee Electric Railway Company* brought its action against *Pfister, Vogel, Burke, Hinsey, Manschott,* Field, Aeppli, the Northern Trust Company, G. W. Hinckley, A. M. Hinckley, and *Francis E. Hinckley,* the plaintiff in this action. Its allegations are, in the main, substantially the same as in *Hinckley's* suit against *Pfister* and others. It charges that the plaintiff company was organized, among other things, with reference to acquiring

the franchises and property of the Milwaukee Cable Rail-
way Company, and that prior thereto it had been agreed
between the persons composing the latter company that
the plaintiff should be organized, and for that purpose. It
alleges the transfer to it of the property, rights, and fran-
chises "for a consideration, as stated, to the plaintiff."
That its whole capital stock was issued to the defendants
*Hinckley*, *Hinsey*, Aeppli, and Field, none of said persons
paying anything of value for said stock, except the defend-
ant *Hinckley;* but there is no allegation of what amount
he paid for his stock. It is charged that in the cable rail-
way company and in the plaintiff company the only persons
having any actual interest therein were the defendants
*F. E. Hinckley and Hinsey*, and that "some agreement"
existed between them and the plaintiff and the defendants
Aeppli and Field, by which the defendant *F. E. Hinckley*
was to advance money to the plaintiff as its creditor for
corporate purposes, but what the terms of that agreement
were is not stated. It is four times asserted in this com-
plaint that *Hinsey* paid no money, property, or anything
of value whatever for the stock of the plaintiff company;
and there is no allegation to show what interest he really
had, if any, in either of said companies. The complaint
further states the issue of the stock of the company, the
execution of the trust deed or mortgage, the certification
of $250,000 of the bonds secured by it, the delivery thereof
to the defendant *Pfister* as collateral security for the pay-
ment of the note of the plaintiff for $125,000, and the
power of sale contained in the note, as in *Hinckley's* com-
plaint; and alleges that the said disposition of the bonds
and power of sale were unauthorized and illegal, to the
knowledge of *Pfister;* the deposit, as security, with *Pfister*,
by the defendants *Hinckley* and *Hinsey*, of 2,502 shares of
the capital stock,— 1,001 issued to the defendant *Hinsey*,
and 1,501 issued to the defendant *Hinckley;* and that no

other bonds were ever delivered, certified, or issued. It charges that *Pfister*, *Vogel*, *Hinsey*, and *Burke* colluded together for the purpose of creating fictitious liens against the corporation by virtue of said bonds, and obtaining control of its stock at the same time, so as to control corporate action with reference thereto, and occupying the position of creditor for a large amount under the said bonds so unlawfully issued. It alleges the sale of 100 of said bonds by *Pfister* to the defendant *Vogel* for $50,000, and the retention of 150 thereof, and also of the note of the plaintiff for $125,000, substantially as in the other complaint; and that, after the sale, *Pfister* sold at private sale the 2,502 shares of the capital stock so obtained as security under the power of sale, or pretended to sell the same, to *Vogel* for $5,000. That the power of sale did not include the right to sell said stock until after the whole of said bonds had been sold by him, and that not only was such power of sale unauthorized, but it was not complied with in the sale of the stock. That said sale of bonds and stock to *Vogel* was colorable, and no consideration was paid therefor by *Vogel*, but they were bid in by him as trustee for *Pfister*, in pursuance of said agreement or combination between *Pfister*, *Vogel*, *Burke*, and *Hinsey*. That thereafter *Vogel* transferred part of said stock to *Burke*, and he claims the right to vote thereon at the corporate meetings of the plaintiff, and the defendant *Hinckley* also claims the right to vote the same stock, and to be the owner thereof. That he lays claim to be the owner of the stock held by the defendant *Vogel*, and *Vogel* claims to be the owner thereof, and that the plaintiff is unable to determine who is the owner, or entitled to vote thereon, or liable thereon; but does not show what part of said stock has been registered, if any. That the plaintiff has no other interest in the question of the ownership of said shares, but is impartial therein. That when the stock was issued there

was some agreement, but what it was is not stated, by and between *Hinckley* and *Hinsey*, that *Hinckley* should be a creditor of the plaintiff, and be repaid by it for certain moneys advanced by him for corporate purposes, and that the stock of the plaintiff should be issued to *Hinsey* gratuitously, and to *F. E. Hinckley* in part gratuitously and in part for value, in certain proportions, but what proportions is not stated; and that they had it in mind and intended thereby *to provide for a sale of the street railway*, and that it was agreed in such case that *Hinckley* should be first repaid his cash advances and other payments made by him out of the proceeds of sale, and the other corporate debts to be paid out of the proceeds of such sale, and the residue to be divided between *Hinckley* and *Hinsey* "in a certain proportion agreed upon," but what proportion is not stated; and that the stock was issued accordingly. That *Hinckley* has an action pending in this court against the plaintiff company, in which he claims to be its creditor for upwards of $100,000, and asks to have a lien declared in his favor on its' property, and the same foreclosed, and a receiver appointed.

The complaint contains substantially the same allegations as *Hinckley's* in respect to pending suits against the plaintiff, and the liability of its property to be seized on execution or attachment, to its serious damage, and those for whom it is trustee; and also as to the necessity that its railway should be kept in operation and no forfeiture of its franchises be incurred. That *Pfister* is interested in competing and rival lines, for the building of which he has procured an ordinance, and is in collusion with *Vogel*, *Burke*, and *Hinsey* to gain control of the property and franchises of the plaintiff, and so impair its value, or to create fictitious or unlawful claims against it; and that *Hinsey* now controls a majority of the board of directors. The plaintiff asks judgment that said $250,000 of bonds be canceled and

set aside; that an account be taken of the stock of plaintiff issued without consideration, and void under the statute for that reason; that all such stock be canceled and set aside; that the valid portions of plaintiff's stock be determined and declared, and for that purpose that the defendants *Hinckley, Burke,* and *Vogel* be required to interplead, and that the amount due from the plaintiff to *Hinckley* and any other of its creditors be ascertained and be declared a lien on its corporate property; that, if necessary, the property of the plaintiff be sold, and the proceeds applied to the payment of its debts and costs and expenses of the action, and the residue divided among the *bona fide* stockholders; and for an injunction, etc.

On application of the plaintiffs, these actions were consolidated by order of the court, and directed "to proceed to trial under and upon the pleadings then filed and served, or such other pleadings as the parties opposing the consolidation might choose to make or serve pursuant to law;" and prescribing that the title of said action should be the same as specified in the order. When the consolidated action came on for trial, the defendants *Pfister, Vogel, Burke,* and *Hinsey* objected to the reception of any evidence under either complaint, on the ground that neither of them stated facts sufficient to constitute a cause of action. The court sustained the objection, and dismissed the complaints, with costs, from which the plaintiffs *Hinckley* and the electric railway company appealed.

For the appellant *Milwaukee Electric Railway Company* there was a brief by *C. H. Hamilton,* attorney, and *Turner & Timlin,* of counsel; for the appellant *Hinckley* there was a brief by *Turner & Timlin,* attorneys; and the cause was argued orally by *W. H. Timlin.* They contended, *inter alia,* that the complaint of the corporation, either alone or consolidated with *Hinckley's,* states a good cause of action. It shows an unlawful issue of bonds for less than seventy-

five cents on the dollar, in contravention of the statute.
R. S. sec. 1753; *Wood v. Union Gospel Asso.* 63 Wis. 9;
*New Castle N. R. Co. v. Simpson,* 21 Fed. Rep. 533; *Chicago v. Cameron,* 120 Ill. 447. It shows an attempt by the
pledgee of its bonds, *Pfister,* through the medium of a colorable and fictitious sale to *Vogel,* to create a debt of
$100,000 against the corporation, for which the corporation
received only a consideration of $50,000 by a credit of the
last named sum on *Pfister's* note. *Jesup v. City Bank,* 14
Wis. 359; *Ackerson v. Lodi B. R. Co.* 28 N. J. Eq. 542;
*Richardson v. Green,* 133 U. S. 30. It shows the issue of
a large part of the stock of the corporation gratuitously,
contrary to statute, by means of which the corporation is
no longer able to raise money by the usual mode and the
corporate affairs are managed by directors who owe their
election to such void stock and have no pecuniary interest
or responsibility in such affairs. *Wood v. Union Gospel
Asso.* 63 Wis. 9; *New Castle N. R. Co. v. Simpson,* 21
Fed. Rep. 533; *Fosdick v. Sturges,* 1 Biss. 255; *Perry v.
Tuskaloosa C. S. O. M. Co.* 93 Ala. 364; *Clarke v. Lincoln
L. Co.* 59 Wis. 655. The stock bid in by *Vogel* and redistributed to *Pfister* and *Burke* is also claimed by *Hinckley,*
who contends that the colorable or fictitious sale did not
divest his title; and the corporation is entitled to know
who its true stockholders are. *Salisbury Mills v. Townsend,* 109 Mass. 115; *Providence Bank v. Wilkinson,* 4 R. I.
507; *Cady v. Potter,* 55 Barb. 463; *Cheever v. Hodgson,* 9
Mo. App. 565. A bill in the nature of an interpleader may
be maintained where other equitable relief is sought in addition to the interpleader. *Bedell v. Hoffman,* 2 Paige,
199; *Mohawk & H. R. Co. v. Clute,* 4 id. 391, 392. Courts
will interfere to restrain any acts on the part of directors
or officers constituting a breach of trust. *Dodge v. Woolsey,* 18 How. 341; *Pearson v. Concord R. Co.* 62 N. H. 537;
*Dambman v. Empire Mills,* 12 Barb. 341; *People v. Bal-*

*lard*, 3 N. Y. Supp. 845. Stock issued contrary to law without consideration should be canceled at the suit of the corporation. *Scovill v. Thayer*, 105 U. S. 143. No matter what relief is demanded, if the corporation is entitled to be heard in a court of equity upon either of the foregoing propositions, the demurrer was improperly sustained. *Hiles v. Johnson*, 67 Wis. 517; *Scheibe v. Kennedy*, 64 id. 564.

The complaint of the plaintiff *Hinckley* states facts which entitle him to maintain an action in equity, as a surety of whose pledge a wrongful and fraudulent sale has been made, to disregard such sale or have it set aside and have the property of the principal debtor sold and applied in payment of the debt and in discharge of the property of the surety. *Harris v. Newell*, 42 Wis. 691; *Neimcewicz v. Gahn*, 3 Paige, 648; *Irick v. Black*, 17 N. J. Eq. 189; *Philadelphia & R. R. Co. v. Little*, 41 id. 519; *Moore v. Topliff*, 107 Ill. 241; *Norton v. Reid*, 11 S. C. 593; *Bishop v. Day*, 13 Vt. 81; *Morse v. Larkin*, 46 id. 371; *Saylors v. Saylors*, 3 Heisk. 525; *Keel v. Levy*, 19 Oreg. 450; *Smith v. Smith*, 8 Ired. Eq. (N. C.), 34; *Hellams v. Abercrombie*, 15 S. C. 110; *Whitridge v. Durkee*, 2 Md. Ch. 442; *McDaniel v. Austin*, 32 S. C. 601; *Meader v. Meader*, 88 Ky. 217; *Morrison v. Poyntz*, 7 Dana, 307; 1 Brandt, Suretyship (2d ed.), secs, 34, 223–225, 237–239; 1 Story, Eq. Jur. secs. 327, 730; 2 id. sec. 849; *Hayes v. Ward*, 4 Johns. Ch. 123–132; *Marsh v. Pike*, 1 Sandf. Ch. 210; Jones, Pledges, secs. 685, 686; 2 Jones, Mortgages, sec. 1380; *Jenkins v. Gunnison*, 50 Wis. 388; *Beckham v. Duncan*, 9 S. E. Rep. (Va.), 1002; *Ballew v. Roler*, 124 Ind. 557; *McConnell v. Scott*, 15 Ohio, 401; *Pratt v. Thornton*, 28 Me. 355.

For the respondents *Pfister*, *Vogel*, and *Burke*, there was a brief by *Quarles, Spence & Quarles;* for the respondent *Hinsey* there was a brief by *Frank M. Hoyt;* and the cause was argued orally by *Mr. Charles Quarles* and *Mr. Hoyt.* They argued, among other things, that the facts stated do

not warrant the appointment of a receiver. *Re Argus Printing Co.* 1 N. Dak. 434; *Boyd v. Sims,* 87 Tenn. 779; Cook, Stock (2d ed.), secs. 745, 746; 2 High, Inj. secs. 1203–1210; *Eschweiler v. Stowell,* 78 Wis. 316; *Haywood v. Lincoln L. Co.* 64 id. 639–645; High, Receivers, sec. 288, note; Beach, Receivers, sec. 403; *Baker v. L. P. R. Co.* 34 La. Ann. 757; *French v. Gifford,* 30 Iowa, 148; *Neall v. Hill,* 16 Cal. 146; *French Bank Case,* 53 Cal. 495–551; *La Grange v. State Treas.* 24 Mich. 469–471; *Talbot v. Scripps,* 31 id. 268; Gluck & Becker, Receivers, secs. 22–24; *Ward v. Salem St. R. Co.* 108 Mass. 332. The complaint of *Hinckley* will not bear the aspect of a bill by a surety. *Shields v. Barrow,* 17 How. 130–143; *Harris v. Newell,* 42 Wis. 687–691; *Wright v. Simpson,* 6 Ves. Jr. 714–734; *Philadelphia & R. R. Co. v. Little,* 41 N. J. Eq. 519–529; *Moore v. Topliff,* 107 Ill. 241–250; *Stamford Bank v. Benedict,* 15 Conn. 437–446; 1 White & Tudor, L. Cas. 136; 3 Pom. Eq. Jur. sec. 1417, n. 2; *Gary v. Cannon,* 3 Ired. Eq. 64–68.

PINNEY, J. While, as held in *Doud v. W., P. & S. R. Co.* 65 Wis. 108, when the sufficiency of a complaint is raised by an objection to any evidence under it, a greater latitude of presumption will be indulged in to support it than upon a formal demurrer, we are obliged to hold that the complaints in this action as consolidated are so defective that no relief can be granted on either or both of them. The complaint of *Hinckley* prays relief in very many respects and on various grounds, but the difficulty is that on nearly all important matters affecting *Hinckley's* claim to relief his title or grounds for relief are so imperfectly and vaguely stated that it would be found impossible from the complaints to frame a judgment that could be sustained consistent with the law.

1. Although the bonds issued to *Pfister* to the amount of $250,000 are void, as having been issued in violation of the

statute (sec. 1753, R. S.), without value given therefor equal to seventy-five per cent. of the par value thereof, yet neither the appellant the electric railway company, nor *Hinckley* as stockholder in right of the company, if we are to assume that he owns any valid stock, can maintain any action for the surrender or cancellation of these bonds, they having been pledged to *Pfister* as security for the loan of $125,000 to the corporation, for want of tender of the principal sum loaned and interest. Seeking equity, the corporation or any one suing in its right, would be required to do equity, and make tender, as a condition of relief, of the debt for which they were pledged. 1 Pom. Eq. Jur. § 391; *Mumford v. Am. L. Ins. & T. Co.* 4 N. Y. 463; Jones, Corp. Bonds, § 219. Besides, both the corporation and *Hinckley*, as its president, participated in the unlawful issue of them, and occupy no position to ask the intervention of a court of equity, for they could neither of them make out a title to relief except by showing a plain and positive violation of the statute. They are in equal wrong with *Pfister*, the party to whom the bonds were issued. *Clarke v. Lincoln L. Co.* 59 Wis. 655, and cases there cited. The law will leave the parties as they are, affording a remedy to neither.

2. It is difficult to say that the complaint shows with reasonable clearness and certainty that *Hinckley* ever acquired any valid stock of the electric railway company. He was the president of the company, and was a party to the issue and pledging of all the stock alleged to have been issued in violation of the statute.. R. S. sec. 1753. *Hinckley* asserts several times in his complaint, in substance, that for the two fifths of the stock of the company issued to *Hinsey* he paid no money, property, or anything of value, but the same was issued to him gratuitously, contrary to law; and he admits that of the other three fifths issued to himself for *part* he paid no money or value, and for the greater part thereof he paid property and services, but he

specifies no part so that it can be identified or described, and proffers no allegation as to the value of the services or property paid for the rest. He states that none of the parties to whom stock was issued, but himself, paid any-thing of value for it. He had already stated that he was the only person who had any actual interest in the cable railway company, the franchises and property of which were transferred to the electric railway company; that all this property, and all the' property of the electric railway company, except such as was acquired from the proceeds of the loan from *Pfister*, and such as it remains indebted for, had been "furnished by him (*Hinckley*), and no other of the stockholders of the company paid or furnished any portion thereof;" that this was done under an agreement that he should be and remain a creditor of the electric rail-way company to the amount thereof, and be repaid from the proceeds of the sale of its said bonds, or, in lieu, that he should receive such bonds at seventy-five cents on the dollar; and he claims that for such advances (which include the cost of the cable railway company) he is a creditor of the electric railway company in a sum exceeding $100,000. How much of this was for the transfer of his sole beneficial ownership in the property and assets of the cable com-pany, and how much was for subsequent advances, we are not informed. Failing to make any statement in this and other respects, it cannot be said with reasonable certainty that he is the owner of any full-paid stock in the company. He seems also to be making his interest in the cable com-pany do double service: *First*, as a payment for stock in the electric railway company; and, *second*, as the basis of a still subsisting indebtedness against it. These allegations are so uncertain, indefinite, and contradictory that they cannot serve, we think, to show that the plaintiff is a stock-holder and entitled to a standing in court in that capacity. He ought to have stated the facts so as to have enabled

the court to determine whether the payment he made in money or services and property was applied in part payment of his entire block of stock, and, if in payment of a particular part, he should have identified it. The allegations of the complaint justify an unfavorable inference in this respect, and do not warrant the conclusion that he was the owner of any *bona fide* full-paid stock. On the contrary, the allegations of the complaint are much more clear and satisfactory to show that he has the position and rights of a creditor of the corporation for all he had furnished or done for it, and for his beneficial interest in the cable company. In this view of the case, the plaintiff's stock, as well as that issued to *Hinsey* and others, falls under the condemnation of sec. 1753, R. S., and is void as not having been fully paid for "to the amount of its par value," so that neither of them can make any claim by means of or through it to the aid or protection of a court of equity as against the other, based upon the rights of a stockholder.  *Clarke v. Lincoln L. Co.* 59 Wis. 655.

*Hinckley's* rights in relation to the pledge of his stock under the agreement with *Pfister* stand upon entirely different grounds, and the agreement not to resort to his stock until after the sale or disposition of the remainder of its bonds may well be enforced, as in such case the illegality alleged would be collateral to the agreement, and he would not be compelled to trace his right to relief through the illegality of issue of the stock. Regarding the case, in respect to the rights of *Hinckley* under this agreement, in the light of the allegations of the complaint, that the sale of the stock by *Pfister* was in violation of its express terms, and in excess of his power as pledgee, and therefore void; that its sale and purchase by *Vogel* was merely colorable, and was made for the use and benefit of *Pfister*, and that it is now held in trust for him,— we are unable to understand upon what ground he can invoke the aid of a court

of equity when it is plain from these allegations that such colorable sale and purchase and holding of the stock in trust for *Pfister* have not extinguished *Hinckley's* rights as pledgor, and, if they had, for such wrongful sale he has a plain and adequate remedy at law for a wrongful sale and conversion of the stock. The precise terms of the pledge of stock in this case do not appear, but it is conceded by the parties that they were such as to transfer to *Pfister*, and to take from *Hinckley*, the right of voting upon it. He cannot ask a court of equity to restore to him the stock, or the right to vote upon it, of which he voluntarily deprived himself, until the purpose for which it was pledged has been satisfied.

3. If *Hinckley* is a creditor of the electric railway, as claimed by him, he cannot, on that ground merely, have any standing in a court of equity, for his debt has not been established at law, and he is merely a creditor at large. His remedy is at law, and it does not appear to have been exhausted. *Hinckley* had himself, by the pledge of the 1,501 shares of stock given to *Pfister*, in connection with the stock *Hinsey* had pledged to him, control of the corporation through a preponderance of its capital stock, and the charge of collusion between *Pfister* and *Hinsey* to obtain control through or by means of its capital stock loses all significance and force, and there is nothing to show any attempt to create any false or spurious debts against the corporation, or any improper lien upon its property. Indeed, the complaint lacks a statement of any sufficient title to relief or ground justifying the appointment of a receiver or the granting of an injunction.

4. It is claimed that *Hinckley's* complaint ought to be sustained as a suit in equity by a surety of the corporation through the pledge of his stock to *Pfister* for its debt, to compel the principal debtor to pay the debt, or to require *Pfister* to proceed against the property of the company

and the bonds pledged to him to obtain payment of his debt. It is, we think, a sufficient answer to this contention that the complaint does not seem framed for any such purpose, and no such specific relief is prayed. It does not appear from the complaint, by clear and direct allegation, that the debt for which the plaintiff's stock was pledged was due when this action was commenced. There is at best a mere inference from the facts stated that such may be the case. A surety cannot go into equity for relief against either the creditor or the debtor until after the debt is due. 1 Brandt, Suretyship, §§ 223, 229. The complaint, as against *Pfister*, proceeds on grounds hostile to his rights, and asserts the invalidity of the bonds pledged to him as security for his debt, as well as the stock; and this puts his entire debt and security in danger. How can he expect to ask that *Pfister* shall be put, for the satisfaction of his debt, first to his security, namely, the pledged bonds, which the surety maintains in the same breath is wholly void, and when he alleges that all the stock pledged to *Hinsey* for the same purpose is void also? He must come in, when asking such relief as surety, in subordination to the creditor's right to obtain payment in full without risk or cost; and the allegations of the complaint fail to show that the creditor can obtain speedy, direct, and certain satisfaction by resort to the security, but the plaintiff puts that in doubt, not only as to the property pledged, but in respect to the other property and assets of the company, for he alleges that the *bona fide* debts of the corporation, including the amount due to himself, exceed $250,000, and that the company is without means or property sufficient to pay its debts. The corporation, in its complaint, however, claims that it has a large amount of property over and above the amount required to pay its just debts. The complaint of the corporation cannot aid *Hinckley's*, of which it is really no part. The authorities cited by the respond-

ent's counsel abundantly show that, under the circumstances alleged, and for the reasons above stated, the complaint of the appellant *Hinckley*, in this aspect of it, cannot be maintained.

5. The complaint of *Hinckley*, as well as that of the electric railway company, seems to have been framed upon the theory of obtaining a decree substantially winding up the corporation, taking an account of its debts and assets, and the adjustment of its liabilities, and the application of its property to their payment, and a division of the surplus, if any, between the stockholders. It is scarcely necessary to cite authorities to show that a stockholder, as such, cannot maintain a complaint for such purposes. *Strong v. McCagg*, 55 Wis. 624. And no case has been cited to show that such a suit can be maintained in equity by the corporation.

6. The foregoing observations dispose of the claim of the corporation to the relief prayed by its complaint, except that portion praying that an interpleader be awarded between *Hinckley*, *Burke*, and *Vogel* to determine the ownership of the valid portion of the stock of the company. It is claimed that the suit of the electric railway company is one in the nature of an interpleader. The only ground for an interpleader is in relation to the disputed rights of stockholders, and it does not appear from the complaint that any necessity existed for the commencement of the action. It does not appear that different parties claim the same debt or duty from or against the corporation, or any duty whatever in relation to the disputed stock, or that the plaintiff is ignorant of their rights or in doubt in respect to them, or that any action is asked of the corporation which will place it in danger of loss or injury from the alleged doubtful claims and conflicting rights of the defendants as between themselves. There is no allegation to show whether evidence of title to the stock of either party has been entered on the stock registry, which is the test of the right of a

stockholder to vote; nor that any application has been made to it to enter on the registry any such stock, or whether any claim has been made against it, or that it has been subjected to any suit or threatened with any in this respect; nor does it charge that any dispute has arisen in respect to dividends, or that any have been earned.   The defendants were actually engaged in litigating their respective claims when this suit was commenced.   Actions of interpleader are not to be encouraged, and ought not to be brought except when there is no other way for the plaintiff to protect himself from a litigation in which he has no interest; and, in order to maintain the action, it is necessary to show that the plaintiff has not acted in a partisan manner as between the different claimants.   Cook, Stock, §§ 387, 407, 540, 544; *McDonald v. Allen*, 37 Wis. 108; *Mohawk & H. R. Co. v. Clute*, 4 Paige, 392; *Bedell v. Hoffman*, 2 Paige, 200, 201; *Buffalo G. S. Co. v. Alberger*, 22 Hun, 349, 353.   It is plain that the complaint of the electric railway company does not state any case for an interpleader.

There are no facts stated in either of the complaints to show that the property and business of the corporation is being mismanaged, or that its property is in danger of being lost through misconduct of its officers or directors.   The apprehensions and fears of the plaintiff *Hinckley* of what may occur are not justified by the facts alleged in his complaint, and, as the complaints are both insufficient, there was, as before stated, no ground for granting an injunction or the appointment of a receiver.

The judgment of the superior court dismissing the complaints is correct, and must be affirmed.

*By the Court.*— The judgment of the superior court of Milwaukee county is affirmed.