KEMMERER et al. v. ST. LOUIS BLAST FURNACE CO. et al.

(Circuit Court of Appeals, Eighth Circuit. February 24, 1914.)

No. 4044.

1. JUDGMENT (§ 735*)—RES JUDICATA—QUESTIONS CONCLUDED.

A judgment of a state court, in an action on a note brought by the payee, which adjudges that the maker, who counterclaimed on the ground that bonds pledged by it to the payee to secure the note were worth about $4,000, and that the payee sold them at private sale and purchased them, and allowed the maker a credit of $100, take nothing by its counterclaim, is not res judicata on the issue of the validity of the bonds.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1263, 1265; Dec. Dig. § 735.*]

2. CORPORATIONS (§ 469*)—BONDS—FICTITIOUS ISSUE.

Under Const. Mo., art. 12, § 8, and Rev. St. Mo. 1909, § 2981, providing that bonds of a corporation shall be issued only for money paid, labor done, or property actually received, and all fictitious increase of indebtedness shall be void, bonds of a corporation, issued and pledged to secure a pre-existing debt due from it, are invalid where no consideration passed to it from the creditor.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1832; Dec. Dig. § 469.*]

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Suit by M. S. Kemmerer and another, a copartnership, doing business as the Whitney-Kemmerer Company, against the St. Louis Blast Furnace Company and others. From a decree denying relief, complainants appeal. Affirmed.

Henry B. Davis, of St. Louis, Mo. (Charles Erd, of St. Louis, Mo., on the brief), for appellants.

William G. Pettus, Lewis & Rice, and Stewart, Bryan & Williams, all of St. Louis, Mo., for appellees.

Before SANBORN and CARLAND, Circuit Judges, and RINER, District Judge.

CARLAND, Circuit Judge. On October 23, 1912, the District Court for the Eastern District of Missouri, Eastern Division, entered a decree of foreclosure and sale in an action therein pending, wherein Whitney-Kemmerer Company, a copartnership, were complainants, and the St. Louis Blast Furnace Company, St. Louis Union Trust Company, and the McPheeters Warehouse Company were defendants. The property covered by the mortgage or trust deed was sold and the proceeds, amounting to $75,000, was paid to the receiver appointed

by the court, and now awaits distribution. The court referred all claims against the Blast Furnace Company, the mortgagee, to a master, who heard all parties interested, and made a final report which was approved by the court. Among the claims presented to the master for allowance, were those of Whitney-Kemmerer Company, which arose in this way: October 1, 1910, the St. Louis Blast Furnace Company executed and delivered its promissory note to Whitney-Kemmerer Company for the sum of $3,664.62, payable November 25, 1910, with interest at 7 per cent. per annum from date. The note was given by the Furnace Company to Whitney-Kemmerer Company in settlement of a pre-existing and past-due indebtedness for goods, wares, and merchandise sold and delivered by the payee in said note to the maker thereof. The note contained a collateral security agreement in the usual form, which recited that $4,000 in bonds of the Furnace Company were deposited with Whitney-Kemmerer Company as security for the payment thereof. Two of the bonds pledged were for $1,000 each, and four for $500 each. They were part of a series of 300 bonds, all of like date and tenor, except as to amount and maturity, aggregating in principal sum $200,000, and all equally secured by a certain mortgage dated as of January 1, 1910, made by the Furnace Company to the St. Louis Union Trust Company as trustee, being the same mortgage which was foreclosed in the present proceedings. About February 1, 1911, the Whitney-Kemmerer Company sold the bonds pledged to secure the payment of the note at private sale for $100; D. S. Bygate, acting for the pledgees, purchased the bonds for their use and benefit. November 17, 1911, Whitney-Kemmerer Company recovered a judgment against the Furnace Company on the note for $4,237.61, being the amount of principal and interest due thereon, less the $100 received from the sale of the bonds. July 1, 1912, there was due on the judgment $4,440.60, and on the bonds the sum of $4,480. Whitney-Kemmerer Company presented both of these claims for allowance to the master, claiming that the amount due on the bonds was a secured claim under the mortgage. The master disallowed the amount claimed to be due on the bonds, for the reason that the bonds were void, there being no lawful power in the Furnace Company, under the laws of Missouri, to issue the same under the circumstances shown in the record, the Furnace Company having been organized under the laws of that state.

[1] In the suit on the note in the Circuit Court of St. Louis, the Furnace Company interposed a counterclaim, wherein it alleged that the bonds pledged to secure the payment of the note were worth approximately $4,000, and that Whitney-Kemmerer Company had sold the same at private sale, purchased the bonds themselves and only allowed a credit of $100, and the counterclaim prayed for a judgment against Whitney-Kemmerer Company for $3,900. At the trial the court adjudged that the Furnace Company take nothing by its counterclaim. The Whitney-Kemmerer Company claimed before the master that the validity of the bonds in question was adjudicated in the suit on the note; the master held otherwise. The report of the master having been approved by the District Court, Whitney-Kemmerer

Company has appealed from the judgment approving the master's report, so far as their claim on the bonds is concerned. Only two errors are assigned, the ruling of the court holding the bonds invalid, and the ruling on the plea of res adjudicata. The validity of the bonds was in no wise in issue in the suit on the note, and the ruling below upon the plea of res adjudicata must be affirmed.

[2] We now come to consider the ruling of the court holding the bonds invalid. The law of Missouri which it is claimed invalidates the bonds is as follows:

"No corporation shall issue stock or bonds, except for money paid, labor done or property actually received, and all fictitious increase of stock or indebtedness shall be void." Const. Mo., art. 12, § 8.

"The stock or bonds of a corporation shall be issued only for money paid, labor done or money or property actually received." Rev. St. Mo. 1909, § 2981.

A reading of the plain language of the Constitution and statute, ought to be sufficient to uphold the ruling of the court below. We approach the consideration of the question involved with the belief that it is our duty to give effect to such legislation in all cases where the law applies, and not by any strained construction to thwart its purpose out of any consideration of mere business convenience. This case presents a good illustration of the evil which the lawmaking power sought to prevent. No consideration, whatever, passed from Whitney-Kemmerer Company to the Furnace Company at the time the bonds were issued and pledged, and none ever has passed on account of the bond issue; still an indebtedness of $4,480 is sought to be proved against the Furnace Company. If this does not make the amount of the claim fictitious within the meaning of the law, then we are unable to comprehend the meaning of the word. Fictitious— not true or real. Cent. Dict. .

In Wisconsin the Legislature, in order to prevent the issuance of bonds by corporations under such provisions as above quoted, by having a small consideration pass at the time the bonds are issued, has provided that corporations of that state shall not issue any bonds or other evidence of indebtedness, except for money, labor or property estimated at its true value actually received by it, equal to 75 per cent. of the par value thereof, and that all bonds issued, contrary to the provisions of this law, should be void. Section 1753, Wisconsin Statute. Such a law would prevent just what happened in the case at bar. The Whitney-Kemmerer Company received the bonds, and soon sold them at private sale to themselves for $100, and now present a claim against the Furnace Company for $4,480. It is not surprising that the Furnace Company went into the hands of a receiver; no corporation could survive such business methods.

The Constitution of Arkansas of 1874 (article 12, § 8) contained a provision for all practical purposes the same as the above provision quoted from the Constitution of Missouri. In Memphis & Little Rock Railroad v. Dow, 120 U. S. 287, 7 Sup. Ct. 482, 30 L. Ed. 595, the Supreme Court, in holding that such a provision did not prevent the carrying out of an agreement between mortgage bondholders of an embarrassed railroad company in the state of Arkansas, by which it

was agreed that trustees should buy in the mortgaged property on foreclosure, and convey it to a new company to be organized by the bondholders, which should issue new mortgage bonds to pay the expenses of the sale, and other new mortgage bonds to be taken by the bondholders in lieu of their old bonds, and full paid-up stock subject to the mortgage debt, to be delivered to and held by the bondholders without any payment of money, said:

"The prohibition against the issuing of stock or bonds, except for money or property actually received or labor done, and against the fictitious increase of stock or indebtedness, was intended to protect stockholders against spoliation, and to guard the public against securities that were absolutely worthless. One of the mischiefs sought to be remedied is the flooding of the market with stock and bonds that do not represent anything whatever of substantial value."

In the same case the court approved the following language used by the Supreme Court of Illinois in Peoria & Springfield Railroad Co. v. Thompson, 103 Ill. 187, saying:

"In reference to a provision in the Constitution of Illinois, adopted in 1870 [Const. 1870, art. 11, § 13], containing a prohibition, as to railroad corporations, similar to that imposed by the Arkansas Constitution upon all private corporations, the Supreme Court of the former state, in Peoria & Springfield Railroad Co. v. Thompson, 103 Ill. 187, 201, said: 'The latter part of the clause of the Constitution in question, which declares that "all stocks, dividends, and other fictitious increase of the capital stock or indebtedness of such corporation shall be void," we think, clearly points out the chief object which the constitutional convention sought to accomplish in adopting it; and to this we must look in a large degree, for a solution of the language which precedes it. The object was, doubtless, to prevent reckless and unscrupulous speculators, under the guise or pretense of building a railroad or of accomplishing some other legitimate corporate purpose, from fraudulently issuing and putting upon the market bonds or stocks that do not and are not intended to represent money or property of any kind, either in possession or expectancy; the stock or bonds in such case being entirely fictitious. * * * Under this provision of the Constitution railroad companies have no right to lend, give away, or sell on credit, their bonds or stock, nor have they the right to dispose of either, *except for a present consideration*, and for a corporate purpose.' "

Without some such provision as is found in the laws of Wisconsin the provisions that we have quoted from the Constitution and law of Missouri do not require that money, property, or labor, received in exchange for bonds, shall be of the equal market value of the bonds, provided the transaction is a real one, based upon a present consideration, and having reference to legitimate corporate purposes. In Farmers' Loan & Trust Co. v. San Diego St. Car Co. (C. C.) 45 Fed. 518, Judge Ross, in speaking with reference to a constitutional provision of California, similar to the one in the Constitution of Missouri, used the following language:

"This constitutional and statutory inhibition is plain, and has but one meaning—the money paid, labor done, or property actually received must be paid, performed, or received, as the case may be, on account of the issuance of the bonds; and any bonds issued contrary to this provision are of course illegally issued. This provision does not mean, and cannot be held to mean, that such bonds may be issued as collateral security for any sort of pre-existing indebtedness. Now none of the bonds in question are, or ever were, issued or held for money paid, labor performed, or property actually received on account of their issuance. On the contrary, all of them

were delivered and are held as collateral security in part for pre-existing indebtedness of the defendant corporation," etc.

In Nichols v. Waukesha Canning Co. (D. C.) 195 Fed. 807, Sanborn, District Judge, in holding that the issuance of bonds by a corporation for antecedent debts was not an issuance for money, labor, or property within the provisions of section 1753, Statute of Wisconsin 1898, said:

"Literally considered, these bonds are not within the statute, because they were not issued for money, nor for property estimated at its true money value. Existing debts are not money, and to say that they are property capable of estimation at its true money value does considerable violence to the words used. No property, claim, or debt was released or given up. Had the bonds been issued at the time of the respective loans, but for some reason the money not then paid over, subsequent payment of it might fairly be said to bring the case within the statute. The bonds would then be issued for money, as in the Kenosha Case they were issued for property. Haynes v. Kenosha Electric Co., 139 Wis. 227, 119 N. W. 568, 121 N. W. 124. Again, if the notes or claims had been given up and canceled, and the bonds taken outright at not more than four to three, another question would be presented. This might be held the purchase of property at not less than three-fourths of its true value. No such novation, however, occurred. The intent and purpose of the statute will be presently considered; but from the language alone it is clear to a demonstration that the issue of bonds for a pre-existing debt not surrendered is not covered. Pre-existing debts are neither money nor property capable of being valued unless actually given up. * * * The true intent and purpose of the statute were to prevent the creation of corporate securities not representing actual value, and also to prevent the sacrifice of such value by summary sale of the bonds. Such sales of fairly good securities, which may have been pledged at the lawful rate of four to three, often result most disastrously to the debtor. The bonds, put out at three-fourths their value, at forced sale bring 5 to 25 per cent. of their face. This is applied to the debt, and the balance still stands against the debtor, plus the par value of the bonds sold. The sale may thus nearly double the total indebtedness. It is said in argument that the language of the Wisconsin court in the Pfister Case, as to the necessity of an argument [agreement] that pledged bonds shall be accounted for on the basis of at least three-fourths par, is a dictum, not necessary to the actual decision. Possibly this is true, but its wisdom cannot be gainsaid. If bonds can be pledged at 75 and then sold at 5, the restriction imposed by the statute is of no force."

The history of the bonds pledged in this case makes the language above quoted appropriate. In Pfister v. Milw. Elec. Ry. Co., 83 Wis. 86, 53 N. W. 27, bonds for $250,000 were issued as security for a cash loan of $125,000. Chief Justice Lyon, in speaking of the provisions of the Wisconsin statute, said:

"The object of the statute is to protect stockholders and bona fide creditors from the improvident issue of its bonds by the corporation, which might, and, if allowed, probably would, result in the wrecking of the corporation. Hence the statute requires that no corporate bonds shall be issued unless the company shall actually receive therefor 75 per cent. of their par value. When a corporation puts its bonds beyond its control by hypothecating them as security for loans, or for any other purpose, or in any other manner, it issues them, within the meaning and intention of the statute. If it so hypothecates them without stipulating that they shall be accounted for at not less than 75 cents on the dollar of their par value, it violates the statute, and the bonds thus issued are void. Any other construction would render the statute a dead letter, thus defeating all the wise and salutary purposes it was intended to accomplish. Had the company sold Pfister the 250 bonds

for $125,000, it would have been a safer transaction for stockholders and bona fide creditors of the corporation, for in that case nothing would have remained due to Pfister. But now, if this transaction is upheld, Pfister may sell his remaining bonds for 25 cents on the dollar of their face value, or less, and thus leave due him a large debt from the company, while the company would remain liable for the full face value of the bonds. No construction of the statute which would permit such an evasion of its provisions can be tolerated."

The same rule was adopted by the Circuit Court for the Eastern District of Wisconsin in National Foundry & Pipe Works v. Oconto Water Co. (C. C.) 52 Fed. 36, approved in Mowry v. Farmers' L. & T. Co., 76 Fed. 38, 22 C. C. A. 52. The authorities are in entire harmony to the effect that under such provisions of law as we are considering, a pledge of bonds is an issue thereof; that where there is no statutory restriction the courts will ordinarily leave a private corporation to determine the amount of labor, property, or money which it will receive for its bonds or other evidence of indebtedness; that a private corporation having authority to borrow money may pledge its bonds for that purpose. But the great weight of authority is clearly to the effect that the money, labor, or property received for the bonds, whatever its value, must constitute a present consideration for the issuance thereof. Counsel for appellant have cited cases which they claim are authority for the proposition that a private corporation may pledge its bonds to secure an antecedent debt, under such constitutional and statutory provisions as are in force in Missouri. An examination of these cases discloses that not more than one of them can be said to support the proposition as stated, and it is doubtful whether that one, when rightly considered, does so. The case last referred to is Nelson v. Hubbard, 96 Ala. 238, 11 South. 428, 17 L. R. A. 375. Under the Code of Alabama a private corporation has the power—

"to borrow money, and to mortgage, or otherwise convey or pledge its property, real or personal, and its franchises to secure the payment of the money so borrowed, *or any other debt contracted by it.*"

The Constitution of Alabama has the same provision as that of Missouri. The Supreme Court of Alabama in the case cited decided that a difference between the amount of bonds issued and the debt does not create a fictitious increase of indebtedness if they can properly be regarded as issued for money, labor done, or money or property actually received, and that the power to borrow money given by the Code included the power to pledge the bonds of the corporation, secured by its mortgage on property as collateral security for debts of the corporation presently created or already owing. Whether or not the bonds of a private corporation could be pledged for an antecedent debt was not the question directly in issue in the case, and we fail to find in it any strong support for the position of counsel. Firth Co. v. South Carolina Loan & Trust Company, 122 Fed. 569, 59 C. C. A. 73, is not in point. In that case it appears that the Constitution of South Carolina has the same provision as that of Missouri, and the court decided that a pledge of bonds was an issue thereof, the bonds in the case being issued for a present consideration in money, which was spent by the corporation for legitimate corporate purposes, to wit, the purchase of

machinery. The case also decided that the mere fact that the amount of the bonds exceeded the indebtedness did not create a fictitious indebtedness. Western Supply Co. v. U. S. Mex. Trust Co., 41 Tex. Civ. App. 478, 92 S. W. 986, simply decided that the Texas Southern Railway Company, having authority under the laws of Texas to issue bonds, could pledge them, and that the constitutional provision of Texas, which is the same as that of Missouri, did not mean that there must be a dollar in money received for each dollar of bonds. Gilchrist Trans. Co. v. Phœnix Ins. Co., 170 Fed. 279, 95 C. C. A. 475. This case decided that a pledge of bonds was an issue thereof and that a private corporation that had the power to borrow money, under the laws of Ohio, and issue bonds and notes therefor, could pledge its bonds to secure another indebtedness. No constitutional or statutory provisions like those in the case at bar were considered by the court.

. Farmers' Loan & Trust Co. v. Toledo, 54 Fed. 759, 4 C. C. A. 561. It was decided in this case that under the laws of Michigan, which authorize railroads to issue and dispose of bonds for the purpose of borrowing money, a railroad company might pledge its bonds for money borrowed. No constitutional or statutory provisions like those in the case at bar were in the case.

Atlantic Trust Co. v. Woodbridge Canal, etc., Co. (C. C.) 79 Fed. 842. In this case Judge Morrow decided that a provision of the Constitution of California, similar to that of Missouri, did not prevent corporations from pledging their bonds as collateral security to secure the payment of a debt less in amount than the amount of the bonds, and also that to pledge the bonds was an issue thereof.

We have examined all the cases cited by counsel, and have examined all others which we have been able to find; and, with the exception of Nelson v. Hubbard, supra, we find the whole trend of authority supporting the proposition that there must be a present consideration, in order to satisfy the demands of such constitutional and statutory provisions as are here involved. Any other construction simply fritters away the safeguards which the Legislature sought to throw around the creation of corporate indebtedness.

The decree below must be affirmed; and it is so ordered.