MUDGE v. BLACK, SHERIDAN & WILSON et al.

(Circuit Court of Appeals, Eighth Circuit. May 12, 1915.)

Nos. 4229, 4230, 4233, 4234.

1. CORPORATIONS ⚫⟶469—BONDS—LEGALITY OF ISSUE—PLEDGE TO SECURE ANTECEDENT DEBT—MISSOURI CONSTITUTION AND STATUTE.

Bonds of a corporation of Missouri, issued by it to secure an antecedent debt, with no new consideration, except an extension of the debt, are void by virtue of the constitutional or statutory provision of that state prohibiting its corporations from issuing bonds, except for money paid, labor done, or property actually received.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1832; Dec. Dig. ⚫⟶469.]

2. CORPORATIONS ⚫⟶469—BONDS—ISSUANCE "FOR" MONEY, LABOR, OR PROPERTY.

In the constitutional or statutory provision of Missouri that "no corporation shall issue stock or bonds except for money paid, labor done or property actually received," the word "for" is used in the sense of "in place of"; the purpose of the provision being to prevent the issue of stock or bonds unless the corporation receives in place of the same an amount in value, in money, labor, or property, equal to their par value.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1832; Dec. Dig. ⚫⟶469.

For other definitions, see Words and Phrases, First and Second Series, For.]

3. COURTS ⚫⟶366—FEDERAL COURTS—AUTHORITY OF STATE DECISIONS.

The construction of the Constitution and statutes of a state by its highest judicial tribunal is controlling in the national courts, in the absence of any question of general or commercial law or of a violation of the Constitution or statutes of the United States.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 954–957, 960–968; Dec. Dig. ⚫⟶366.

Conclusiveness of judgment between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank of Memphis v. City of Memphis, 49 C. C. A. 468; Converse v. Stewart, 118 C. C. A. 215.]

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Suit in equity by the Whitney-Kemmerer Company, a partnership, against the St. Louis Blast Furnace Company and others. From a decree of distribution, Edwin W. Mudge, H. L. Brenneman, and Frank L. Perin, Cohen-Schwartz Rail & Steel Company, and W. H. Smollinger, doing business as the Iron Mountain Stock Farm, intervening creditors, appeal. Affirmed.

⚫⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Frank Y. Gladney, of St. Louis, Mo., Edwin C. Luedde and Leo M. Grace, of St. Louis, Mo. (Augustus L. Abbott and John B. Edwards, both of St. Louis, Mo., on the briefs), for appellants.

William G. Pettus, of St. Louis, Mo., for appellees.

Before SANBORN and SMITH, Circuit Judges.

SANBORN, Circuit Judge. [1] In Kemmerer v. St. Louis Blast Furnace Co., 212 Fed. 63, 128 C. C. A. 519, this court held that the pledge of the bonds of a Missouri corporation to secure an antecedent debt without the receipt by the corporation of any consideration except the former consideration for the old debt and the extension of the time of payment of that debt was a violation of the provisions of the Constitution and statutes of Missouri which rendered the bonds void. Those provisions are:

"No corporation shall issue stock or bonds, except for money paid, labor done or property actually received, and all fictitious increase of stock or indebtedness shall be void." Constitution of Missouri, art. 12, § 8.

"The stock or bonds of a corporation shall be issued only for money paid, labor done or property actually received." Revised Stat. of Missouri 1909, § 2981.

The appellants present this question again in the same foreclosure proceeding upon facts so nearly identical with those in Kemmerer's Case that it is unnecessary to state them. Reference to the opinion in that case is made for the material facts. If our decision in that case was right, the decision of the court below in the cases of the appellants was also right. Their counsel contend that our former decision was erroneous, and they have presented briefs so exhaustive and have argued the issue with such marked ability and evident candor that they have persuaded us to examine it again. The authorities they have cited, their oral arguments, and their briefs have received consideration and meditation. But our examination has served only to confirm and strengthen our former conviction. Our conclusion and the reasons for it were so clearly and forcibly stated in Judge Carland's opinion in Kemmerer's Case that any general discussion of the question would be futile. Accordingly, this opinion will be confined to a brief statement of a few reasons why some of the arguments of counsel for appellants have failed to satisfy that our former decision was a mistake.

They contend that the indebtedness of the corporation was not increased by the pledges of the bonds. But the pledges of the bonds unquestionably created, at the times they were respectively made, legal liabilities of the corporation to increase its indebtedness by the difference between the amounts that should eventually be realized from the enforcement of the pledges and the par value of the bonds pledged. It is knowledge too common to escape judicial cognizance that these differences are ordinarily great, often more than 75 per cent. of the par value of the bonds. In Kemmerer's Case bonds of this corporation of the par value of $4,000 sold under the collateral agreement for only $100 so that the pledge of those bonds increased the debt of the corporation $3,900. Suppose a corporation gives its note for $10,000 for

a just antecedent debt and pledges its mortgage bonds for $50,000 to secure it, and the pledge is foreclosed by decree of court, and thereafter the bonds are sold for $5,000 to a third party. There then remains a debt of the corporation of $5,000 to the original creditor and a debt of $50,000 to the purchaser of the bonds, and the cause of the increase of the indebtedness of the corporation from $10,000 to $55,000, of which $45,000 would be without any valuable consideration and fictitious, would be the original pledge of the bonds. A decision that the provisions of the Constitution and the statute could be evaded by such pledges would have the practical effect of nullifying them.

Again, the prohibition of the Constitution and of the statute is not against a fictitious increase of the indebtedness of the corporation only; it is first and chiefly against the issue of stock or bonds except for money paid, labor done, or property actually received—that is to say, unless the corporation actually receives an amount equal to the par value of the bonds in money, labor, or property. Counsel insist nevertheless that their clients escape the ban of this inhibition because long before the bonds were issued, when the antecedent debts they were pledged to secure were incurred, the corporation actually received property equivalent in value to the amounts of those debts and the Constitution and the statute fail to specify when the money, labor, or property which conditions the lawful issue of the bonds must be received, and they contend that these bonds were issued and pledged within the meaning of the Constitution and the statute for the property which formed the consideration of the antecedent debts. If that were the true interpretation of the provisions of the Constitution and the statute, a corporation which had incurred a just debt of $10,000 for property actually received might thereafter successively issue and pledge its stock or its bonds to secure that debt to the amount of $10,000 and permit them to be sold under the pledge for $100, or some small amount, and it might thereby increase its outstanding stock or bonds on account of its antecedent debt of $10,000 to many times that amount. These interpretations of the terms of the Constitution and the statute for which counsel argue seem strained, unnatural, and inconsistent with these familiar canons of construction; the plain, obvious, natural meaning should be preferred to any curious, hidden sense suggested by the meditation and ingenuity of able and acute minds and the exigencies of the case. The object which the enacting body sought to attain and the evil which that body sought to remedy may always be considered for the purpose of ascertaining its intention, and that intention should be given effect if the terms of the enactment do not render that result impossible. A rational, sensible construction, one that will advance the remedy and repress the wrong, must be given if consonant with the terms of the Constitution or the statute.

[2] The obvious, natural, reasonable meaning of the inhibition of the Constitution and the statute is that no corporation shall issue stock or bonds except in exchange for value equal in amount to the par value of the stock or bonds, either in money paid, labor done, or property actually received. The word "for" is used in numberless relations and has many meanings. One of them is "in place of," "instead of,"

"in consideration of," "as to pay a dollar for a thing, two for five cents." Century Dictionary, For, 4. It was in this sense that this word was used in this prohibition. The object of the enacting bodies was to prevent the issue by a corporation of any stock or bonds unless the corporation received instead of them an amount of value equal to the par value thereof, and this to the end that the amount of stock and bonds of a corporation should not misrepresent and deceive those who dealt with it regarding the value of its assets. Now in these cases the corporation received no money, or labor, or property, no increase of its assets for, or instead of the bonds it pledged for its old debts. In each case it had the same amount of assets the moment before it made the pledge that it had thereafter. But thereafter that portion of its assets covered by the mortgage securing the bonds was incumbered by an additional liability. Not only this, but the corporation did not even issue its bonds in payment to the extent of their par value of its antecedent debts so that it can be truthfully said that it received in the property, which was the consideration of those old debts, an amount of value equal to the par value of the bonds it issued. On the other hand, if it were true that it issued its bonds for the property that was the consideration of its old debt, it would also be true that by its pledges of its bonds it issued them for an amount of value in property equal to that percentage of the par value of the bonds which should thereafter be realized from the sale of them under the foreclosure of the pledges. The construction that the pledge of bonds to secure antecedent debts of a corporation is forbidden by the provisions of the Constitution and the statute accords with the obvious, natural meaning of those provisions, gives effect to the intention of the enacting bodies, represses the wrong they sought to prevent and advances the remedy they provided.

Another contention of counsel is that the former decision of this court was founded on the opinion in Nichols v. Waukesha Canning Co. (D. C.) 195 Fed. 807, that the Court of Appeals of the Seventh Circuit subsequently overruled that opinion, and in First Savings & Trust Co. v. Waukesha Canning Co., 211 Fed. 927, 931, 128 C. C. A. 305, 309, delivered one adverse to the decision of this court. Repeated readings of the opinion of that court, however, have led our minds to the conclusion that, instead of conflicting with, it sustains, the conclusion of this court that the bonds pledged in the Kemmerer Case and in the cases in hand were issued in violation of the Constitution and statute of Missouri and are void, although the reasoning by which the court reached that conclusion may not in all things coincide with the views of this court. That case arose under a statute of Wisconsin to the effect that no corporation should issue bonds except for money, labor, or property estimated at its true value actually received equal to 75 per cent. of the par value thereof, and that all bonds issued contrary thereto should be void. A corporation of Wisconsin pledged its bonds to secure its antecedent debts under an agreement with the pledgees that they would take them in payment and satisfaction of those debts at not less than 75 per cent. of the face of the bonds. The following

words of the Court of Appeals of the Seventh Circuit embody its decision:

"We are therefore of the opinion that in agreeing to take the bonds in question as collateral at the rate of not less than 75 per cent. of their face value upon their past-due claims, and in extending time of payment of the same, the present bondholders afforded to the corporation a valid property consideration equal to 75 per cent. of the face of the bonds, and are therefore satisfying the demands of the Wisconsin statute above set out, provided, of course, the creditors had agreed to accept the bonds on that basis. As to this proposition, all the creditors, excepting perhaps American Appraisal Company, are in the same situation. Unless there was such an agreement, the collateralized bonds are invalid. Pfister et al. v. Milwaukee Electric R. R. Co., 83 Wis. 86, 53 N. W. 27; Hinckley v. Pfister, 83 Wis. 64, 53 N. W. 21; National Foundry & Pipe Works, Ltd., v. Oconto Water Co. et al. (C. C.) 52 Fed. 29; Mowry v. Farmers' Loan & Trust Co., 76 Fed. 39, 22 C. C. A. 52; Haynes v. Kenosha Ry. Co., 139 Wis. 227, 119 N. W. 568, 121 N. W. 124."

The Constitution and statute of Missouri prohibited the issue of the bonds in these cases except for money, labor, or property equal to 100 per cent. of the par value of the bonds. As there was no agreement between the pledgor and the pledgees that the latter would take the bonds in payment of their debts at not less than 100 per cent. of their par value, the bonds, according to the decision of the Court of Appeals of the Seventh Circuit to which reference has just been made, were void. There were, however, many other reasons why this court reached its former decision beside the fact that the United States District Court for the District of Wisconsin had reached a like conclusion in Nichols v. Waukesha Canning Co., 195 Fed. 807.

[3] Finally, the question to be determined here is one of local law, of the interpretation of the Constitution and statutes of Missouri. The construction of the Constitution and statutes of a state by its highest judicial tribunal is controlling in the national courts in the absence of any question of general or commercial law, or of a violation of the Constitution or statutes of the United States. If the decision of the question at issue by this court accords with the decision, or with the probable decision, of the Supreme Court of Missouri, it is right, although there may be conflicting decisions, to some of which counsel has called our attention, in other courts.

Repeated decisions of the Supreme Court of Missouri have established beyond doubt or debate the law in that state that the true construction of the provisions of the Constitution and statute of Missouri under consideration is that they require the money paid, labor done, or property actually received that are made indispensable to the issue of stock by a corporation of that state, to be equal in value to the par value of the stock issued. Garrett v. Kansas City Coal Mining Co., 113 Mo. 330, 338, 20 S. W. 965, 35 Am. St. Rep. 713; Van Cleve v. Berkey, 143 Mo. 109, 134, 135, 136, 44 S. W. 743, 42 L. R. A. 593; Berry v. Rood, 168 Mo. 316, 328, 330, 331, 67 S. W. 644; Hunter v. Garanflo, 246 Mo. 131, 132, 133, 151 S. W. 741.

As the Constitution and the statute condition the power of a corporation of Missouri to issue bonds in the same clause by the same limitations that condition its power to issue its stock, it is equally indispensable to its issue of valid bonds that they be issued only for

money paid, labor done, or property actually received which is equal in value to the par value of the bonds. The opinions of the highest judicial tribunal of Missouri and the considerations to which reference has been made in our former opinion, and in this opinion, have convinced that when the question is presented the Supreme Court of Missouri will decide that bonds issued by a corporation of that state and pledged to secure its antecedent indebtedness without the receipt by the corporation of any valuable consideration for them except the consideration of the old debts and the extension of the time for their payment are issued in violation of section 8, art. 12, of the Constitution of Missouri, and of section 2981, Revised Statutes of that state, and that there was no error in the decision of this question in Kemmerer's Case, nor in the decisions of the court below in the cases in hand.

Let the portions of the decree below challenged by the appellants be affirmed.