(3 App. Div. 273.)

POWELL v. MURRAY et al.

(Supreme Court, Appellate Division, Second Department. April 7, 1896.)

1. CORPORATIONS—LIABILITY OF STOCKHOLDERS.
    A contract purchased by the trustees of a corporation organized under Laws 1848 solely for the manufacture of electric appliances, whereby the company becomes an agent to sell electric supplies manufactured by another corporation, is not "property necessary for its business," within Laws 1853, c. 333 (amending Act 1848), which provides that stock issued in payment of such property shall not be subject to further calls, nor the holders thereof liable for further payments.

2. SAME—CONTRACTS—ULTRA VIRES.
    The purchase, by a corporation organized solely for the manufacture of electric appliances, of the right to act as agents for the sale of electric supplies manufactured by another company, is ultra vires.

3. SAME—POWERS.
    The enumeration of a corporation's powers in its charter implies the exclusion of all others.

Action by William B. Powell against Edward F. Murray and another. Judgment for plaintiff, entered upon the decision of the court on a trial without a jury, and defendants appeal. Affirmed.

Argued before BROWN, P. J., and PRATT, CULLEN, BARTLETT, and HATCH, JJ.

Davenport & Hollister, for appellants.
O. B. Gould, for respondent.

HATCH, J. This action seeks to charge a personal liability upon the defendants as stockholders of the National Electric Manufacturing & Construction Company of New York, a corporation organized, as appears by its charter, for "the manufacture of electric lamp sockets, safety cut-outs and the appliances connected with and used in the setting up and perfecting of electric machinery and electric light and electric motor plants for public and private uses and purposes." Its capital stock was $50,000, divided into 500 shares of $100 each. The defendants were the only stockholders of the company, and there

was issued to each defendant 100 shares of stock, of the par value of $10,000, for which they paid nothing. The company was organized in May, 1890. On April 1st of the same year, the defendants Murray and Latshaw entered into a contract with the National Electric Manufacturing Company of Eau Claire, Wis., whereby they acquired the exclusive right and license, as agents, for the sale of electrical supplies manufactured by said company, in a portion of the state of New York, and in three other Eastern states. The trustees of the New York corporation purchased this contract of the defendants Murray and Latshaw, and as consideration therefor issued to said defendants the remainder of its capital stock. It does not appear that the contract was ever assigned or delivered to the corporation. The corporation did business until 1893, when it became insolvent, petitioned for its dissolution, and was placed in the hands of a receiver. No money was paid for any of the stock issued, and by section 10, Laws 1848, under which the corporation was organized, liability against the stockholders would be created unless they are relieved by other considerations.

Appellants meet this by the claim that the transfer of the contract was a purchase of the property by the corporation, authorized by Laws 1853, c. 333, which amended the act under which it was incorporated. This act provides:

"The trustees of such company may purchase mines, manufactories and other property necessary for their business, and issue stock to the amount of the value thereof in payment therefor; and the stock so issued shall be declared and taken to be full stock and not liable to any further calls; neither shall the holders thereof be liable for any further payments under the provisions of the tenth section of said act."

This claim is the sole question presented by this appeal. By the terms of this amendment the property purchased must be such as is necessary for the business of the corporation, and it has been held that whether the property purchased was in fact necessary for the purposes of the corporation was to be determined in the same manner as other controverted questions. Schenck v. Andrews, 46 N. Y. 589, 57 N. Y. 133.

This contract did not provide for furnishing any material for purposes of manufacture by the corporation. The company which executed it proposed to furnish a manufactured article, and constituted the defendants agents to sell; and by its terms the defendants agreed to organize a company for the purpose of placing the manufactured article upon the market in the specified localities. In what view, then, can it be said that it was necessary for the business of this corporation, which was organized solely to manufacture? An agency to sell is in no sense a business of manufacturing. People v. Roberts, 145 N. Y. 375, 40 N. E. 7. It is doubtful if this license to sell is property, within the meaning of the section invoked. It is not necessary, however, to determine that question, and we express no opinion thereon.

Not only was this license to sell the manufactured article of another company not necessary for any business which could be lawfully carried on by this corporation, but the contract was ultra vires

of it to make.   The charter of a corporation is the measure of its
power, and the enumeration of those powers implies the exclusion
of all others.   Thomas v. Railroad Co., 101 U. S. 71.   The business
proposed to be carried on under this contract was entirely foreign
to the character and scope of the business for which the corporation
was chartered.   As was said by Judge Earl, in speaking of a similar
case:

"It could not lawfully engage in this foreign business simply because it could
make a profit therein.  A corporation may foster its legitimate business by all
the usual and appropriate means.  But it cannot, under the pretense of foster-
ing, engage in transactions entirely ultra vires." Holmes v. Willard, 125 N. Y.
75, 25 N. E. 1083.

In the present case nearly the entire corporate stock was devoted
to making a market for the manufactured article of another concern,
in which, by the use of its property for that purpose, this corporation
was wholly unable to carry on the manufacture of those articles for
which it was brought into being, and thus was wholly destroyed the
purpose of its creation.   The following cases are abundant authority
for the view here taken:   Thomas v. Railroad Co., supra; Minturn
v. Larue, 23 How. 435; Alexander v. Cauldwell, 83 N. Y. 480; Dili-
gent Fire Co. v. Com., 75 Pa. St. 291; Machine Co. v. Wilkinson, 79
Ala. 312; Lime Works v. Dismukes (Ala.) 5 Lawy. Rep. Ann. 100, and
note, 6 South. 122.

It is true that a corporation, like individuals, has capacity to con-
tract; and it may be said, generally, that there is this difference:
The latter may make all contracts which are not forbidden by law or
opposed to the general welfare of society, while the former possesses
only those powers which are expressly granted, and the contract
which it makes must be directly connected with these purposes and
those which are necessary to accomplish the object of its creation.
It is by no means certain that this contract could be assigned to this
corporation.   By its terms the defendants who executed it agreed
to organize a stock company with a bona fide paid-in capital of not
less than $25,000, and with that to thoroughly canvass the territory
allotted to them for the sale of the system of electricity and supplies
manufactured.   That was a part of the contract, and it does not ap-
pear that defendants were authorized to assign it upon any other
terms.   The corporation to whom it is claimed that it was trans-
ferred in no sense answered its terms.   But, whether we say it was
never assigned, or could be assigned, it is clear, for reasons already
stated, that the contract was not property necessary for the use of
the corporation, that the contract by which it was transferred to
it was ultra vires, and the issue of the stock therefor was unlawful.

It follows that the judgment appealed from should be affirmed,
with costs.   All concur.