In re SNYDER et al.

(Supreme Court, Special Term, New York County.　August 29, 1899.)

1. CORPORATIONS—BONDS—VALIDITY.

A corporation and its principal stockholder, a co-partnership, who were indorsers of each other's commercial paper, became financially embarrassed, and, under an agreement made by the corporation, the firm, and the creditors of both, notes executed by the corporation, and indorsed by the firm, were given to the creditors, of which obligations the firm's creditors received notes amounting to a little more than a third of the combined indebtedness, for which the firm assigned to trustees, named in the agreement, all its stock of the corporation, amounting to almost double the amount of notes received by its creditors, besides all assets and other property of the firm. The corporation being unable to meet the notes at maturity, another agreement was made by the same parties, whereby the notes were substituted for bonds secured by a deed of trust and the stock held by the said trustees. *Held,* that the bonds, having been issued to discharge an indebtedness contracted for money or property actually received for the use and lawful purposes of the corporation, were not invalidated by the stock corporation law (Laws 1892, c. 688, § 42), providing that no corporation shall issue either stock or bonds except for money, labor done, or property actually received for the use and lawful purposes of such corporation.

2. SAME—RIGHT TO SHARE AS CREDITOR.

Where a corporation formed by the consolidation of two corporations agreed with a stockholder of one of the consolidated corporations to pay her, in certain amounts, the award made by the court as to the value of her shares at the time of consolidation, and deposited with a trustee bonds to the amount of the award as security for performance of the agreement, and such corporation becomes insolvent, she is entitled, on the settlement of its affairs, to share as a general creditor for the sum still unpaid, and is also entitled to dividends, if any, up to the amount of her claim, on the bonds deposited as security.

Motion by Valentine P. Snyder and Samuel Sanders, receivers of the Bavarian-Star Brewing Company, to confirm the referee's report passing on their accounts.　Report confirmed.

Guggenheimer, Untermyer & Marshall, for the motion.
Simpson & Werner (Benjamin N. Cardozo, of counsel), opposed.

McADAM, J.　There are two specific objections made, and these by one creditor only, the Standard Refining Company, to the confirmation of the referee's report passing upon the receivers' accounts: (1) That a certain issue of bonds by the insolvent company, to the amount of about $900,000, in January, 1894, is illegal; (2) that the referee erred in allowing a general creditor not only a share in the assets of the company as such creditor, but also a dividend upon her interest in bonds held by a trustee, in pursuance of an agreement between the insolvent company and the said creditor, as security for the debt.

1. It appears from the proofs that the insolvent corporation, the Bavarian-Star Brewing Company, was organized in 1893 with a capital stock of $1,000,000, of which the co-partnership of Charles and Louis Heidenheimer owned about $600,000, and the former became vice president and the latter general manager of the company; that in the following summer of 1893 both the corporation and the co-

partnership became financially embarrassed; that the Heidenheim-
ers were indorsers to a large amount of the commercial paper of the
company, and the company was indorser to a large amount of the
commercial paper issued by the firm.    Under these circumstances, a
written agreement was made by the company, the firm, and the cred-
itors of each for an extension of time within which to pay the respec-
tive creditors; notes to the amount of $900,000 were executed by the
company, indorsed by the firm, and given to the creditors, of which
obligations the firm's creditors received notes to the amount of
$340,316.67; and the firm assigned to three trustees, named in the
agreement, all stock of the company held by them, and all assets and
other property of said firm.    Early in 1894, when it became apparent
that the company could not meet its notes at maturity, burdened
with interest at 6 per cent., and also a payment of 5 per cent. of
principal of the original indebtedness, an agreement was made by the
same parties whereby the amount of the notes was funded into a
bond issue of $900,000 under a mortgage or deed of trust to the State
Trust Company, trustee, and it was provided by said agreement that
the shares of stock held by the three trustees hereinabove referred to
should be a further security to the bondholders.    The creditors sur-
rendered their notes, and received bonds in payment therefor.    It is
objected that, under section 42 of the stock corporation law (Laws
1892, c. 688), the issue of bonds is illegal.    The section cited provides
that no corporation shall issue either stock or bonds except for
money, labor done, or property actually received for the use and law-
ful purposes of such corporation.    None of the cases cited by the ob-
jecting creditor is decisive of the question.    As far as appears by the
record, the company's creditors who received its notes had already
given either money or property to the company, so that the substitu-
tion of bonds for their notes was equivalent to the issue, in the first
instance, of bonds for money or property actually received for the use
and lawful purposes of the company.    The bonds were not given as
collateral security merely, but upon surrender of obligations repre-
senting money and property which the company had received and
used in its business.    Although the indebtedness for which the bonds
were issued was antecedent, the consideration was a present one.
About six months after the making of the first agreement by the com-
pany, the firm, and the creditors, it was evident that the company
could not meet the notes and pay the interest, and, to prevent a
suspension of operations by the company, the second agreement was
made, by which the creditors surrendered their notes and all rights
thereon for the bonds secured by the deed of trust.    As the indebted-
edness for which the bonds were issued to discharge was contracted
for money or property actually received for the use and lawful pur-
poses of the corporation, and as there was a present consideration
for the issue of the bonds, it is no strained construction to hold that
the bonds were issued for money or property actually received for the
use and lawful purposes of the corporation.    "When one, for a pres-
ent consideration, in good faith, purchases bonds or stocks in the
regular course of business,    *   *   *   and such consideration is ac-
cepted by the proper officer of the company, and nothing appears to

show that it is to be used or applied to other than legitimate corporate purposes, such bonds or stocks, when thus issued, will be regarded as having been issued for money, labor, or property, as the case may be, 'actually received and applied,' within the meaning of the constitutional provision in question. Any other construction would lead to consequences of the most serious character, which could not have been intended by the framers of the constitution." Railroad Co. v. Thompson, 103 Ill. 202. In the case cited the Illinois court construed a provision of the constitution of that state almost identical in terms with section 42 of our stock corporation law. See, also, Railroad Co. v. Dow, 120 U. S. 287, 7 Sup. Ct. 482. The purpose of the statute was evidently to prevent reckless and unscrupulous speculators from fraudulently issuing and putting upon the market bonds or stocks that do not, and are not intended to, represent money or property of any kind, either in possession or in expectancy; the stock or bonds in such case being entirely fictitious. See Railroad Co. v. Thompson, supra. Here the bonds were issued to creditors of the company, who had theretofore delivered their property to the company, and the bonds represented that property. As to the bonds issued to take the place of notes given to creditors of the Heidenheimer firm, it appears from the first agreement that the affairs of the company and the firm were so involved that it was impossible to separate the obligations of the one from the other. The debts of the firm for which the company's notes indorsed by the firm were given amounted to a little more than a third of the total combined indebtedness. The firm assigned capital stock of the company to the amount of $600,000 and all other assets and property of the firm to trustees for the benefit of all the creditors, and this stock, on the substitution of bonds for notes, formed part of the security of the mortgage or deed of trust. The firm's creditors (if they can really be called such, as distinguished from the company's creditors) consented to the assignment, and it was for this consideration that they subsequently obtained their bonds. All this was done by the agreement of all the creditors, the corporation, and the firm. No one seriously claims that it was a device to evade the law or accomplish that which was forbidden. Indeed, the entire transaction was fully consummated before the debt of the objecting creditor was contracted. Under the peculiar circumstances, the court does not feel warranted in condemning it as illegal, though the question raised is not free from doubt. Moreover, if any of the bonds are invalidated by the statute, because given for notes representing the firm's debts, and not for money or property received by the company, the objecting creditor has in no intelligent manner designated the particular bonds so given that the court may place its condemnation on them without prejudicing the rights of other creditors whose bonds are not subject to such objection. In Powell v. Murray, 3 App. Div. 273, 38 N. Y. Supp. 233, it appeared that the defendants, who were the only stockholders of a manufacturing corporation, had paid nothing for the shares of stock issued to them, but that two of the defendants had entered into a contract with a foreign corporation by which they acquired the exclusive right to sell its product in this and other states,

and sold the contract to the trustees of the manufacturing corporation, which, in consideration thereof, issued to said defendants the remainder of its capital stock. The court held that this was not a purchase of property necessary for the business of the corporation, within the meaning of the law. In Washburn v. Paper Co., 26 C. C. A. 312, 81 Fed. 17, it is held that stock of a corporation issued for a good will is issued for property actually received, within the meaning of our present statute. Laws 1892, c. 688, § 42. Here the corporation actually received money or property necessary for its lawful purposes and use, which was represented by the notes for which its bonds were thereafter given (see Treadwell v. Hoffman, 5 Daly, 207), and the transaction satisfies the statutory requirements, in view of the acts of the parties and their relation to the transaction.

2. The insolvent corporation, the Bavarian-Star Brewing Company, was formed by the consolidation of the Bavarian and Star Brewing Companies. Prior to the consolidation one Matilda Schwab was the owner of 15 shares of the capital stock of the Bavarian Brewing Company. She objected to the consolidation, and after it was effected applied to this court, pursuant to the statute, for an order appointing appraisers to ascertain the value of her stock, and, as a result of the proceeding had upon the making of the order, the shares were valued at $15,000 as of November 1, 1892. On February 15, 1894, an agreement was made between the Bavarian-Star Brewing Company, of the first part, and Matilda Schwab, of the second part, which provided that on the signing and delivery thereof the company would pay her, on account of the money due under the award and assessment, $1,250 on April 1, 1894, $750 in cash, and on the 1st day of each and every month thereafter $250, until the payment of the whole award; that $15,000 of the $900,000 issue of bonds should be deposited with the secretary of the State Trust Company as security for the performance of the agreement; that the trustee should hold the stock and bonds until the payment of all the sums to be paid, which sums should bear interest; that in case of default in any of the payments the other payments should, at the election of the party of the second part, become due and payable; that upon the payment of all the sums provided by the agreement the stock and bonds in the hands of the trustee should be surrendered to the party of the first part, and the proceeding for the appraisement of the stock should be discontinued, and the award of the appraisers vacated; but, until all the payments were made, the appraisal proceeding should stand in statu quo, and, in case the party of the second part should exercise her option, and the payments become due, the trustee should deliver to her the stock and bonds held under the agreement. The company owes $5,500 on the contract, and the referee decided that the receiver of Matilda Schwab is entitled to share as a general creditor for said sum, and also entitled to all dividends, if any, up to the amount of her claim upon the $15,000 of bonds deposited with the trustee under the agreement. This seems to be correct, for the creditor cannot be deprived of any benefit her collateral may afford her; the debtor, though insolvent, being entitled to redeem only on payment of the entire debt. People v. Remington, 54 Hun, 505, 8 N. Y. Supp. 34, affirmed in 121

N. Y. 328, 24 N. E. 793. The action of the court in overruling the objections, with the facts found by the referee, affords a sufficient basis for the distribution of the fund according to the rights of the respective parties, and renders it unnecessary to burden the estate with the expense of a new reference.

The exceptions must be overruled, and the report of the referee confirmed. The fees and allowance of the receivers will be fixed on the settlement of the order, which must be on two days' notice.