## In re PROGRESSIVE WALL PAPER CORP.

### In re JUSTIN.

(Circuit Court of Appeals, Second Circuit. January 11, 1916.)

### No. 77.

1. CORPORATIONS ⬅469—MAKING AND ISSUANCE OF BONDS—CONSIDERATION.
    Under Stock Corporation Law N. Y. (Consol. Laws, c. 59) § 55, providing that no corporation shall issue either stock or bonds, except for money, labor done, or property actually received for the use and lawful purpose of the corporation, bonds of a corporation could not be pledged to secure payment of a pre-existing debt, and an extension of the time for payment of the debt, or the surrender of the corporation's old note and the substitution therefor of a new note, with the same or different indorsers, did not satisfy the statute.
    [Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1832; Dec. Dig. ⬅469.]

2. CORPORATIONS ⊚⇒469—MAKING AND ISSUANCE OF BONDS—CONSIDERATION—
"MONEY PAID."

The payment by a creditor of a corporation to the corporation of money which the corporation immediately pays back to the creditor to extinguish an old indebtedness, so that a new indebtedness may be created for which bonds of the corporation may be pledged, is not an issuance of the bonds "for money paid," within Stock Corporation Law N. Y. § 55.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1832; Dec. Dig. ⊚⇒469.

For other definitions, see Words and Phrases, Second Series, Money Paid.]

3. CORPORATIONS ⊚⇒474—MAKING AND ISSUANCE OF BONDS—CONSIDERATION.

Where, at the time corporate bonds were pledged by the corporation as collateral security for a pre-existing indebtedness, there was no agreement that they should not be sold by the creditor for less than their par value, the issuance thereof could not be validated by a stipulation, made after the bankruptcy of the corporation, that they should not be so sold, in view of Bankr. Act July 1, 1898, c. 541, § 70, subd. "e," 30 Stat. 565 (Comp. St. 1913, § 9654), giving the trustee the title of the bankrupt as of the date he was adjudged a bankrupt, and providing that the trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and recover the property so transferred or its value.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1854; Dec. Dig. ⊚⇒474.]

4. CORPORATIONS ⊚⇒474—MAKING AND ISSUANCE OF BONDS—CONSIDERATION—
"HOLDER FOR VALUE."

A creditor of a corporation, receiving its bonds as collateral security for a pre-existing indebtedness, contrary to Stock Corporation Law N. Y. § 55, was not a "holder for value," entitled to the protection given one taking commercial paper before maturity as collateral security, as presumptively it knew that the law forbade the corporation to issue bonds, except for money, labor, or property actually received, and it also knew that it was receiving them without giving either money, labor, or property, and hence took the bonds with notice of the infirmity in its title.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1854; Dec. Dig. ⊚⇒474.

For other definitions, see Words and Phrases, First and Second Series, Holder for Value.]

5. CORPORATIONS ⊚⇒474—MAKING AND ISSUANCE OF BONDS—CONSIDERATION—
"ISSUED."

Bonds of a corporation, pledged by it as collateral security for a pre-existing debt, were "issued," within Stock Corporation Law N. Y. § 55, forbidding the issuance of bonds, except for money, labor, or property.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1854; Dec. Dig. ⊚⇒474.

For other definitions, see Words and Phrases, First and Second Series, Issue.]

6. BANKRUPTCY ⊚⇒290—PROCEEDINGS BY TRUSTEE—ILLEGAL TRANSACTIONS.

A corporation's participation in the illegal issuance of its bonds as collateral security for a pre-existing indebtedness, contrary to Stock Corporation Law N. Y. § 55, did not prevent the granting of relief to its trustee in bankruptcy, suing to compel the return of such bonds.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 418–429, 451–455; Dec. Dig. ⊚⇒290.]

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

7. CONTRACTS ☞138(1)—GROUNDS—ILLEGAL TRANSACTIONS.

 While, as a general rule, neither courts of law nor courts of equity will lend their assistance to either party to an illegal contract, either to enforce it or set it aside, or to recover back money paid or property transferred under it, there are exceptions to the rule as well established as the rule.

 [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 681–700; Dec. Dig. ☞138(1).]

Petition to Revise and Appeal from Order of the District Court of the United States for the Northern District of New York.

In the matter of the Progressive Wall Paper Corporation, bankrupt. A petition by Fred H. Justin, as trustee, for an order requiring the First National Bank of Ballston Spa, N. Y., to turn over to the trustee certain bonds of the corporation, was denied by the District Court (224 Fed. 143), and the trustee appeals and files a petition to revise. Reversed, and order of the referee affirmed.

 The Progressive Wall Paper Corporation, hereinafter called the Corporation, is organized under the laws of the state of New York. It was adjudged a bankrupt on December 10, 1914, and Fred H. Justin was appointed trustee of the bankrupt estate and qualified as such. Its debts amounted to about $345,000, and its property, exclusive of real estate, was worth about $79,000.

 In 1905 the Corporation borrowed $10,000 from the First National Bank of Ballston Spa, hereinafter called the Bank, and gave to it its promissory note with certain indorsements thereon. The note was renewed from time to time, and partial payments were made on it. On January 22, 1912, the unpaid balance due on that day was for the sum of $7,000. The note was unsecured, save for the individual indorsements of the officers of the Corporation, including one Asahel R. Wing. On the last-mentioned day a renewal note for $7,000 was given, indorsed as before by the prior indorsers except Wing—who declined, he having sold his interest in the Corporation. In place of his indorsement and as further security the Corporation delivered to the Bank as collateral security for the payment of the note seven second mortgage bonds made by the latter or its predecessor in name for $1,000 each. These bonds were secured by a mortgage on the real property and plant of the Corporation, which mortgage had been given to the Adirondack Trust Company as trustee, and was dated November 1, 1911. Prior to the time when these bonds were delivered to the Bank they had not been issued or used by the Corporation, but had remained in the possession of its officers. On November 2, 1911, the directors of the Corporation adopted a resolution authorizing its treasurer to issue the bonds secured by the mortgage above mentioned "to pay or to secure, as collateral, the payment of the notes of the Corporation, then outstanding or which might be given thereafter." In pursuance of that vote the bonds were delivered to the Bank on January 22, 1912, as above set forth. The note has been renewed from time to time at the same sum and with the same indorsers and the bonds have remained in the Bank's possession ever since as collateral for the note and debt.

 On January 15, 1915, the claim on this note was filed with the referee in bankruptcy by one Ingalsbee, one of the indorsers on the note. It was filed as a secured claim, and it was stated that the security held by the Bank for the debt consisted of the seven $1,000 bonds. On January 20, 1915, the Bank gave notice to the trustee in bankruptcy and to the indorsers that the bonds would be sold at public auction to the highest bidder at its banking house on January 30, 1915.

 Thereupon the trustee in bankruptcy filed an answer, in which he alleged that the bonds were illegally issued and not valid, and that the Bank was not entitled to hold the same. He asked that the Bank should be restrained from enforcing the lien on the bonds and that they be declared invalid and be re-

turned to the trustee. The Bank appeared, evidence was taken, and the referee made an order adjudging that the bonds were illegal and never lawfully issued; that the claim of the Bank to hold them as collateral security was also illegal; and that the Bank be enjoined from enforcing the bonds and be required to deliver them up to the trustee.

The order of the referee holding the bonds invalid and void in the hands of the Bank was reversed by the court below, and the order for an injunction against a sale of the bonds was modified, so as to provide that the Bank be enjoined from disposing of the same at less than their par value. The District Judge in his opinion said: "If the Bank will file a stipulation that it will not sell or undertake to sell or dispose of these bonds for less than their par value, and stating that such agreement was a part of the contract of pledge, there may be an order reversing the order of the referee now under review."

Weeds, Conway & Cotter, of, Plattsburgh, N. Y. (Frank E. Smith, of New York City, of counsel), for appellant.

Luther A. Wait, of Saratoga Springs, N. Y. (Edgar T. Brackett, of Saratoga Springs, N. Y., of counsel), for appellee.

Before LACOMBE, COXE, and ROGERS, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). The trustee in bankruptcy seeks a decree adjudging that certain bonds held by the appellee Bank were unlawfully transferred to it by the bankrupt, and that these bonds do not constitute a lien upon the real property of the bankrupt, and that the Bank be required to return the bonds to his possession. This relief has been refused him in the court below, and he has come into this court asking that the order of the District Judge be reversed, and that the order made by the referee in bankruptcy be affirmed.

[1] At the time these bonds were transferred as collateral security to the Bank there was a valid indebtedness due to the Bank from the Corporation which amounted to $7,000. As the Corporation was not ready to pay the note when it matured, and as one of the accommodation indorsers desired to be relieved from indorsing the new note to be given in place of the old one which was to be surrendered, it was agreed that such new note would be accepted without this indorser's signature upon the surrender to the Bank of the bonds now in question to be held as collateral security for the ultimate payment of the note. The validity of this transaction depends upon the construction to be placed upon section 55 of the Stock Corporation Law of the state of New York which provides that:

"No corporation shall issue either stock or bonds except for money, labor done or property actually received for the use and lawful purpose of such corporation." Consol. Laws, c. 59.

It is claimed that under this statute the corporation had no power to issue its bonds for an antecedent debt. That a real debt existed, and that the directors authorized the issue of the bonds and the surrender of them to secure the payment of it, is not disputed. The provision in the New York statute is not unusual. It may be found inserted in the Constitutions of some of the states, while in others it exists merely as a statutory prohibition.

The question we have to determine is one of local law. The construction placed upon a local statute by the highest judicial tribunal

of the state enacting it will as a rule be followed by the federal courts without criticism or further inquiry. Supreme Lodge Knights of Pythias v. Meyer, 198 U. S. 508, 25 Sup. Ct. 754, 49 L. Ed. 1146 (1905). There are some exceptions to the rule, as where the question involved is of general or commercial law (Presidio County v. Noel Young Bond Co., 212 U. S. 58, 29 Sup. Ct. 237, 53 L. Ed. 402 [1908]), or violates the Constitution or statutes of the United States (Elmendorf v. Taylor, 10 Wheat. 152, 160, 6 L. Ed. 289 [1825]), or where the Supreme Court of the United States has first construed the statute, in which case it may not feel bound to surrender its convictions on account of a contrary subsequent decision of the state court (Pease v. Peck, 18 How. 595, 15 L. Ed. 518).

The courts have held that where the Legislature of one state enacts a provision taken from a statute of another state, in which the language of the act has received a settled construction, it is presumed to have intended that such provision should be understood and applied in accordance with such construction. See Ryalls v. Mechanics' Mills, 150 Mass. 190, 22 N. E. 766, 5 L. R. A. 667; Rhoads v. Chicago, etc., R. Co., 227 Ill. 328, 81 N. E. 371, 11 L. R. A. (N. S.) 623, 10 Ann. Cas. 111. But if this provision of the statute of New York has been adopted from the legislation of some other state, and had received a settled construction in that state prior to its enactment in New York, the fact has not been brought to our attention by counsel on either side.

The question now presented to this court is one upon which the New York decisions afford little light. In the Matter of Snyder, 29 Misc. Rep. 1, 59 N. Y. Supp. 993 (1899) the question was as to the right to use the bonds not as collateral security for an antecedent debt but for the actual payment of the debt, the outstanding notes being surrendered. The right to use the bonds as payment was sustained. The court said:

"The company's creditors who received its notes had already given either money or property to the company; so that the substitution of bonds for their notes was equivalent to the issue, in the first instance of bonds for money or property actually received for the use and lawful purposes of the company."

In Haule v. Consumers' Park Brewing Co., 150 App. Div. 582, 586, 135 N. Y. Supp. 900, 902 (1912), Judge McLaughlin stated that:

"The corporation could issue its stock only for money paid or property received. It could not issue it as collateral security for money borrowed or for the future delivery of bonds."

We passed on this provision of the New York statute in Re Waterloo Organ Co., 134 Fed. 345, 67 C. C. A. 327 (1904), and held the bonds in that case validly issued. The facts in that case were that the corporation already indebted to the bank desired further credits which the bank was unwilling to grant except upon further security. Under those circumstances the company issued the bonds to the bank as security for past and future advances and under an agreement that the bank would account for them at their par value. We said that, as the company had actually received a consideration equal to the full value of the bonds and had enjoyed the benefits thereof, it should not

be permitted to escape payment therefor by alleging the invalidity of the bonds, and we affirmed the decision of the court below. The case was again before this court. 154 Fed. 657, 83 C. C. A. 481 (1907). The mortgage given to secure the payment of the bonds had been fore-closed and the question was upon the distribution of the proceeds of sale. We held that the bank which held the bonds was not entitled to share in the proceeds of sale of the mortgaged property unless it first surrendered the notes which it had taken for the advances made when or after it received the bonds.

The foregoing cases do not go to the question involved in the present case, and we shall therefore examine the cases elsewhere decided to see what the courts have held respecting similar constitutional or statutory provisions.

The Constitution of California (article 12, § 11) has a provision very similar to the New York statute. It reads:

"No corporation shall issue stock or bonds except for money paid, labor done or property actually received."

This was construed in the United States Circuit Court for the Southern District of California in Farmers' Loan & Trust Co. v. San Diego Street Car Co., 45 Fed. 518 (1891), in a proceeding to foreclose a mortgage upon the property of the railroad company given to secure the payment of certain bonds which had been pledged to secure the payment of antecedent indebtedness and, at least in some cases, to obtain an extension of time. The court held that none of the bonds were ever legally issued. In its opinion the court said:

"This constitutional and statutory inhibition is plain, and has but one meaning—the money paid, labor done, or property actually received must be paid, performed, or received, as the case may be, on account of the issuance of the bonds; and any bonds issued contrary to this provision are of course illegally issued. The provision does not mean, and cannot be held to mean, that such bonds may be issued as collateral security for any sort of pre-existing indebtedness. Now none of the bonds in question are, or ever were, issued or held for money paid, labor performed, or property actually received on account of their issuance. On the contrary, all of them were delivered and are held as collateral security in part for pre-existing indebtedness of the defendant corporation, and in large part for pre-existing indebtedness, not of the defendant corporation, but of one of its creditors. As had already been said, not one of the bonds was ever sold, and not one of the holders of them paid a dollar on account of their delivery."

The same provision came before the Circuit Court of the Northern District of California in Atlantic Trust Co. v. Woodbridge Canal & Irr. Co., 79 Fed. 842 (1897). But in this case the debt secured was not an antecedent debt. That case decided—what will not be questioned, we take it—that the prohibition under discussion does not prevent the use of bonds as collateral when issued at the time the debt is incurred. The case also decided that the word "issue," used in the constitutional provision, is broad enough to cover a pledge, as well as a sale, of the bonds. "In the contemplation of the law, bonds pledged by a corporation are just as much issued as when they are sold." That such is the law was settled for the federal courts by the decision of the Supreme Court in Memphis & Little Rock Railroad Co. v. Dow, 120 U. S. 287, 7 Sup. Ct. 482, 30 L. Ed. 595 (1887).

In Nichols v. Waukesha Canning Co., 195 Fed. 807 (1912), the District Court for the Eastern District of Wisconsin had under consideration section 1753 of the Wisconsin Statutes, reading as follows:

"No corporation shall issue any stock or certificate of stock except in consideration of money or labor or property estimated at its true money value, actually received by it, equal to the par value thereof, nor any bonds or other evidence of indebtedness, except for money, labor or property estimated at its true money value, actually received by it, equal to seventy-five per cent. of the par value thereof, and all stocks and bonds issued contrary to the provisions of this section, and all fictitious increase of the capital stock of any corporation shall be void."

The court held that the issuance of bonds by a corporation for antecedent debts is not an issuance for "money, labor, or property," as the statute required. In its opinion the court said:

"Literally considered, these bonds are not within the statute, because they were not issued for money, nor for property estimated at its true money value. Existing debts are not money, and to say that they are property capable of estimation at its true money value does considerable violence to the words used. No property, claim, or debt was released or given up. Had the bonds been issued at the time of the respective loans, but for some reason the money not then paid over, subsequent payment of it might * * * be said to bring the case within the statute. The bonds would then be issued for money, as in the Kenosha Case they were issued for property. Haynes v. Kenosha Electric Co., 139 Wis. 227, 119 N. W. 568, 121 N. W. 124. Again, if the notes or claims had been given up and canceled, and the bonds taken outright at not more than four to three, another question would be presented. This might be held the purchase of property at not less than three-fourths of its true value. No such novation, however, occurred. The intent and purpose of the statute will be presently considered; but from the language alone it is clear to a demonstration that the issue of bonds for a pre-existing debt not surrendered is not covered. Pre-existing debts are neither money nor property capable of being valued unless actually given up."

It added:

"In none of the transactions by which the bonds were pledged for the pre-existing debts was there anything paid on account of, or induced by, the delivery of the bonds. * * * Even if there had been an express agreement with every pledgee to account for the bonds at three-fourths their par value, they would still be invalid, because issued for a prohibited purpose."

The above case came before the Circuit Court of Appeals in the Seventh Circuit as First Savings & Trust Co. v. Waukesha Canning Co., 211 Fed. 927, 128 C. C. A. 305 (1914). The court reversed the District Court on the proposition that if the holders of bonds taken as collateral to secure a pre-existing debt agreed to account for them at three-fourths their par value the agreement would still be invalid. It said:

"We are therefore of the opinion that in agreeing to take the bonds in question as collateral at the rate of not less than 75 per cent. of their face value upon their past-due claims, and in extending time of payment of the same, the present bondholders afforded to the corporation a valid property consideration equal to 75 per cent. of the face of the bonds, and are therefore satisfying the demands of the Wisconsin statute above set out, provided, of course, the creditors had agreed to accept the bonds on that basis."

The court agreed that, unless there was such an agreement to account for the bonds at three-fourths their face value, the collateralized bonds would be invalid.

In Kemmerer v. St. Louis Blast Furnace Co., 212 Fed. 63, 128 C. C. A. 519 (1914), the Court of Appeals of the Eighth Circuit had before it the Missouri statute, which reads as follows:

"No corporation shall issue stock or bonds, except for money paid, labor done or property actually received, and all fictitious increase of stock or indebtedness shall be void." Const. Mo. art. 12, § 8. ·

"The stock or bonds of a corporation shall be issued only for money paid, labor done or money or property actually received." Rev. St. Mo. 1909, § 2981.

The court held that the bonds of a corporation issued and pledged to secure a pre-existing debt were invalid. The court said:

"But the great weight of authority is clearly to the effect that the money, labor, or property received for the bonds, whatever its value, must constitute a present consideration for the issuance thereof. Counsel for appellant have cited cases which they claim are authority for the proposition that a private corporation may pledge its bonds to secure an antecedent debt, under such constitutional and statutory provisions as are in force in Missouri. An examination of these cases discloses that not more than one of them can be said to support the proposition as stated, and it is doubtful whether that one, when rightly considered, does so. The case last referred to is Nelson v. Hubbard, 96 Ala. 238 [11 South. 428, 17 L. R. A. 375]. Under the Code of Alabama a private corporation has the power 'to borrow money, and to mortgage or otherwise convey or pledge its property, real or personal, and its franchises to secure the payment of the money so borrowed, or any other debt contracted by it.' The Constitution of Alabama has the same provision as that of Missouri. The Supreme Court of Alabama in the case cited decided that a difference between the amount of bonds issued and the debt does not create a fictitious increase of indebtedness, if they can properly be regarded as issued for money, labor done, or money or property actually received, and that the power to borrow money given by the Code included the power to pledge the bonds of the corporation, secured by its mortgage on property as collateral security for debts of the corporation presently created or already owing. Whether or not the bonds of a private corporation could be pledged for an antecedent debt was not the question directly in issue in the case, and we fail to find in it any strong support for the position of counsel."

The same court had the matter before it in Mudge v. Black, Sheridan & Wilson, 224 Fed. 919, 140 C. C. A. 397 (1915). The question again came up under the Missouri provision and the former decision was reiterated. The court declared that bonds issued by a Missouri corporation and pledged to secure its antecedent indebtedness without the receipt by the corporation of any valuable consideration for them except the consideration of the old debts and the extension of the time for their payment were invalid, and that under the clause of the constitutional provision that "all fictitious increase of * * * indebtedness shall be void" it was indispensable to the issue of valid bonds that they be issued only for money paid, labor done, or property actually received which is equal in value to the par value of the bonds.

We think the cases establish the law to be that under such a statute as that herein involved bonds cannot be pledged to secure payment of a pre-existing debt, and that an extension of the time for payment of a debt does not satisfy the requirement of the statute. The surrender of the corporation's old note and the substitution therefor of the corporation's new note in its place, either with the same or with different indorsers, cannot justify the issuance of the bonds, because

the corporation does not receive in return money, labor, or property within the meaning of the statute. If A. gives his note to B. for $1,000, payable a year from date, and when it becomes due takes it up and gives another note in the same amount for the same debt, it requires a stretch of the imagination to see in the transaction that A. has received "any money, labor or property" as a result of what has taken place. If the maker of a note pays it, and it is returned to him, he does not in receiving it get either money or property, and the nature of the transaction is not changed by the fact that X., Y., or Z. had signed the surrendered note as sureties. And if, instead of paying it, A. gives a new note indorsed by only X. and Y., which B. has consented to accept in lieu of the old note, the nature of the transaction is not changed, and A. has not received "money, labor or property," in this case any more than he did in the former case.

[2] It may also be remarked of the statement that the course which the learned judge has assumed is not the case presented to this court, as the parties did not in fact adopt the course he puts. But if that course is to be regarded as equivalent to the course the parties in this case in fact pursued, then we do not agree with him in his conclusion that it did not involve a violation of the statute. On the contrary, assuming it to be equivalent, without so deciding it, we regard it as a positive violation of the statute, being merely an evasion of its terms. For the purposes of the statute the old indebtedness has not in reality been extinguished, although it is evidenced by a new note, and the pledge of the collateral is made to secure the old debt. The payment by the Bank to the Corporation of the money, which the Corporation immediately pays back to the Bank to extinguish the old indebtedness, so that a new indebtedness may be created for which the bonds may be pledged under the law, is not in our judgment an issuance of bonds "for money paid," within the meaning of the statute. If the statute can be evaded in this manner, it might as well be repealed. The District Judge in his opinion says:

"I think the provision of the New York statute quoted, fairly construed, means that the bonds may be issued for money borrowed at substantially their par value, or given in exchange for labor substantially equal in value to the par value of the bonds, or given in exchange for property to be used for the corporate purposes of the corporation of substantially equal value to the par value of the bonds. The right to sell and dispose of the bonds includes the right to pledge them, as we have seen; but when pledged by the corporation issuing them, with power in the pledgee to sell, the obligation must be imposed on the pledgee to dispose of them at substantially their par value."

[3] It is to be said respecting the above statement that at the time these stocks were pledged there was no agreement that they should not be sold for less than their par value; and the district judge, deeming such an agreement essential to the validity of the transactions, sought to correct the omission by a stipulation made after the bankruptcy of the pledgor corporation. But an issue of bonds illegal when issued clearly cannot be validated by anything done after the corporation which issued them has become bankrupt. The Bankruptcy Act (section 70) gives to the trustee by operation of law the title of the

bankrupt as of the date he was adjudged a bankrupt. And it provides in subdivision "e" that:

"The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a bona fide holder for value prior to the date of the adjudication. Such property may be recovered or its value collected from whoever may have received it, except a bona fide holder for value."

The District Judge in his opinion said:

"It cannot be doubted that if the Progressive Wall Paper Corporation, finding itself unable to longer secure the indorsement of Wing, and through it a renewal of its note at the Bank, had executed a new note indorsed by Cunningham, Ingalsbee, and Derby for the same amount and due three or six months later, and had presented the same at the Bank for discount to obtain money to take up the old note, and had been refused on account of the insufficiency of the security of the indorsers, and the corporation had thereupon pledged $7,000 of its mortgage bonds as additional security for the payment of such notes, and had thereupon secured the discount of such note at the bank and had the proceeds of such note passed to its credit, and thereupon had given its check to the Bank in payment of its old note and had thus secured a surrender of the old note, that the transaction would have been legal and binding, and that the issue of such bonds by so pledging them to the Bank would have been legal and binding under the statute."

It is to be observed of this statement that if the assumption of the District Judge were true, and if it followed from such assumption that what was done in the case at bar was valid, then the courts are wrong which hold that a deposit of bonds to secure an extension of time for the payment of a pre-existing debt is invalid; for the assumption of the District Judge might be equally applied to such a case.

[4] It is argued that the Bank, having taken these bonds as security for a pre-existing debt, is a holder for value under the doctrine of Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865 (1842), and that as one who takes commercial paper before maturity as collateral security for a debt of the seller, due or not due, is protected by the same estoppels as a purchaser for cash, the Bank is entitled to hold these bonds as valid obligations. The difficulty with this argument is that the bank is not a bona fide holder, and the construction contended for would nullify the statute and give validity to what the statute makes invalid. The purpose of the statute is the protection of the stockholders and the creditors against an indebtedness created by the issuance of bonds for which the corporation does not at the time receive either money, labor, or property. The Bank must be assumed to know that the law of the state expressly forbade the Corporation from issuing bonds, unless for money, labor, or property actually received. It also knew that it was receiving the bonds without giving the Corporation either money, labor, or property. It took the bonds with notice of this infirmity in its title, and is not therefore a bona fide holder.

[5] We have taken it for granted that in pledging the bonds herein involved the corporation "issued" them within the meaning of the New York statute. We have not, however, overlooked the appellee's argument that the pledging of the bonds was not an issue of the bonds.

Its counsel has argued that the bonds have not yet been issued, and will not be issued until the title of the pledgor has been divested. Until that has happened he would have us regard them as the pledgor's bonds, and therefore not yet issued. We have not been impressed by the argument. The construction he contends for is not that which the courts have put upon similar statutes. See Illinois Trust & Savings Bank v. Pacific Ry. Co., 117 Cal. 332, 344, 49 Pac. 197 (1897).

[6] This brings us in conclusion to consider the right of the trustee to recover back these bonds. The maxims of the law are familiar doctrine. "Ex dolo malo non oritur actio," and "In pari delicto potior est conditio defendentis." In Hinckley v. Pfister, 83 Wis. 64, 53 N. W. 21 (1892), bonds were issued without complying with the terms of the Wisconsin statute, in that 75 per cent. of their par value had not been received in pledging them as security for a debt. Bonds to the amount of $250,000 had been pledged as security for the loan of $125,000. The court held that, while the bonds were void under the act, yet no action for the surrender or cancellation of them could be maintained by the corporation or by a stockholder in its right without a tender of the amount due to the pledgee. The court said:

"Seeking equity, the corporation or any one suing in its right, would be required to do equity, and make tender, as a condition of relief, of the debt for which they (the bonds) were pledged. Besides, both the corporation and Hinckley, as its president, participated in the unlawful issue of them, and occupy no position to ask the intervention of a court of equity, for they could neither of them make out a title to relief, except by showing a plain and positive violation of the statute. They are in equal wrong with Pfister, the party to whom the bonds were issued. * * * The law will leave the parties as they are, affording a remedy to neither."

[7] While it is true that neither courts of law nor courts of equity will as a rule lend their assistance to either party to an illegal contract, either to enforce it or to set it aside when it has been executed in whole or in part, and will not lend their aid to recover back money so paid or property so transferred, yet there are exceptions which are as well established as the rule. Whether the facts of Hinckley v. Pfister, supra, justified the conclusion the court reached in that case is not before us; but the doctrine of that case is clearly not applicable to the facts of this case which are materially different. In that case the corporation sought to regain possession of the bonds. In the case at bar the trustee of a bankrupt corporation brings the suit. The trustee of a bankrupt may urge, not only all the rights the bankrupt might have urged, had there been no bankruptcy, but in addition he may assert rights which the bankrupt could not assert. His rights are those of the bankrupt, and more, and he can set aside fraudulent transfers, representing, as he does, the rights of creditors.

The order of the District Court is reversed, and that made by the referee is affirmed.