## WESTINGHOUSE ELECTRIC & MFG. CO. v. BROOKLYN RAPID TRANSIT CO. et al.

(District Court, S. D. New York.   March 22, 1919.)

1. CORPORATIONS ⬦474—POWERS—PLEDGE OF BONDS AS COLLATERAL.
     Under the law of New York, a corporation has power to pledge its bonds at less than par as collateral to a loan.

2. STREET RAILROADS ⬦58—PLEDGE OF BONDS AS COLLATERAL—VALIDITY AS TO RECEIVER.
     Receiver of a New York street railway company instructed not to attack the validity of pledges of its bonds as collateral to secure loans made to the company in good faith at a time when the country was at war and the continuance of the company, as a large public utility company, was of great public concern.

In Equity. Suit by the Westinghouse Electric & Manufacturing Company against the Brooklyn Rapid Transit Company and others. On application by Lindley M. Garrison, receiver, for instructions as to whether he should take any proceeding seeking the return of certain bonds of the Brooklyn Rapid Transit Company, pledged by it as collateral security for bank loans and collateral trust notes.

Upon the obtaining of loans from various banks, the railroad company pledged its bonds as collateral security. These transactions have been referred to in the proceedings as the "induced loans." In other instances, when loans became due, additional bonds were pledged in consideration of new loans in renewal. These are referred to as "renewal loans."

Hornblower, Miller, Garrison & Potter, of New York City (Carl M. Owen, of New York City, of counsel), for receiver.

Cravath & Henderson, of New York City (Paul D. Cravath and Robert T. Swaine, both of New York City, of counsel), for noteholders, etc.

Rushmore, Bisbee & Stern, of New York City (Alfred E. Mudge, of New York City, of counsel), for committee of stockholders.

Scott, Gerard & Bowers, of New York City (Francis M. Scott, of New York City, of counsel), for Corn Exchange Bank.

Larkin & Perry, of New York City (John M. Perry, H. V. Poor, and C. B. Hughes, all of New York City, of counsel), for Central Union Trust Co. of New York.

George S. Franklin, of New York City, for War Finance Corporation.

Cullen & Dykman, of Brooklyn (William N. Dykman, of Brooklyn, of counsel), for Brooklyn Trust Co.

Wingate & Cullen, of New York City (T. Ellett Hodgskin, of New York City, of counsel), for People's Trust Co.

Rumsey & Morgan, of New York City (John Hill Morgan, of New York City, of counsel), for Franklin Trust Co.

Harold Swain, of New York City (Archer P. Cram, of New York City, of counsel), for Title Guarantee & Trust Co.

Godfrey Goldmark, of New York City, for Public Service Commission.

William P. Burr, Corp. Counsel, of New York City (Josiah Stover, of New York City, of counsel), for city of New York.

George S. Ingraham, of Brooklyn, for Nassau Nat. Bank of Brooklyn.

Samuel Seabury, John V. Bouvier, and Robert H. Ernest, all of New York City, for certain tort claimants.

Davies, Auerbach & Cornell, of New York City (Harold C. McCollum, of New York City, of counsel), for Columbia Trust Co.

William C. Orr, of New York City, for Fifth Ave. Bank.

Edward J. Connolly, of Brooklyn, for Hamilton Trust Co. of Brooklyn.

MAYER, District Judge (after stating the facts as above). The approach to the solution of the problem is from several standpoints:

[1] First, looking at the question purely as a matter of law, I think there can be no doubt whatever that, whether the reasoning advanced by Mr. Cravath, and those who stand in the same position, or the reasoning advanced by the receiver, is adopted, the result is the same, certainly as to the so-called induced loans, namely, that under the law of New York a corporation has the power to pledge its bonds at less than par as collateral to a loan. I see nothing to the contrary in the case of In re Progressive Wall Paper Corporation, 229 Fed. 489, 143 C. C. A. 557, L. R. A. 1916E, 563, and the list of cases therein cited.

[2] Further, one must look at these questions, if possible, in a large way. If all the authorities were to the contrary, I should strain a very great deal to hold such loans valid. The advances to the railroad by the War Finance Corporation in the summer of 1918 were at a vital time. The War Finance Corporation was organized to assist in just such delicate situations as are here presented, and it would be seriously a source of disturbance if any court were in any manner to leave any doubt as to the validity of advances made under those circumstances at that time.

Similarly, the banks were of great service to this corporation in enabling it to be in funds in connection with important public duties which this corporation was bound to perform. Hence so far as the induced loans, so called, are concerned, in which the banks are interested, I approach their position in precisely the same way as I have indicated I would approach the position of the War Finance Corporation.

Therefore, whether Receiver Garrison's opinion is correct or not as to the reasoning upon which a decision may properly rest, or whether Mr. Cravath's argument is or is not correct, to the effect that the court, in its duty to follow the law as it exists, must approach the conclusion from the standpoint of the reported cases referred to by Mr. Cravath, the result in either case is the same.

When it comes to the question of the so-called renewal loans, I am frank to say that, if necessary, I should look for a means of differentiating the situation from that which was presented in the Progressive

Wall Paper Case; and, in accordance with familiar methods and principles, it is well that, if the court can find a different set of facts, especially in equity, to work out an equitable result, the court should endeavor so to do.

The method which the Brooklyn Rapid Transit Company took in its transactions with the banks, when these renewal times came along, was apparently deliberately adopted, and properly so, in order to obviate any question that these loans were other than new loans in law. There is no suggestion of bad faith, no suggestion of just a passing back and forth of pieces of paper under a guise designed to cover the real transaction; but these were genuine transactions, in which the banks safeguarded themselves, in which, for instance, the Corn Exchange Bank (I assume that transaction as typical) meant to put the matter in a shape where the suggestion that this was technically a renewal or extension of a loan, instead of a new loan, could not prevail.

In the next place, there is a force in the proposition which former Judge Scott has advanced for himself and his associates, that the original terms of the collateral note were such, in the requisite for additional collateral, as always to relate back to the original transaction.

Finally, dealing as we are now with a very important situation, where the court is properly and naturally concerned, that at this time financial conditions shall remain as nearly stable as possible, that the financial situation shall not be disturbed by any question as to the validity of transactions which are honorable and honest transactions, I should, and I think properly so, in my discretion as a court of equity, decline to authorize the receiver to do anything to disturb that situation, based as it is upon money actually lent, upon transactions, so far as appears, honestly conceived and honestly carried out in the ordinary course of business of this character which has to do with the financing of a large public utility company.

Whatever the reasoning may be which leads to the result, the result will be the same. I do not approach the result from any definite avenue of reasoning, because that may more properly be the subject-matter of consideration when the time comes for it, if it ever does come (and it may never come), when this question, in a direct, contested litigation, can be carefully considered by a court of competent jurisdiction.

The sole question now, sitting as a court of equity, is what is my duty in respect of instructions to the receiver. And, having thus endeavored to outline my view sufficiently in order to enable those interested to understand my attitude, my instructions are that the receiver shall not at this time, or at any time in his capacity as receiver, other than in some litigation, if such occurs, where he shall have some duty, attack the validity of the collateral either in respect of the induced, the intermediate, or the so-called renewal loans, and an order accordingly may be presented.